UNITED STATES of America,
Plaintiff–Appellee,

v.

Jay DORN, a/k/a J. Frederick Dorn,*
Defendant–Appellant.

No. 94–2116.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 12, 1994.

Decided Nov. 3, 1994.

---

* According to the defendant, his first name is the letter "J," not "Jay" as spelled in the information and subsequent pleadings.

for obstructing justice under U.S.S.G. § 3C1.1. Finding no error, we affirm.

## I.

On December 7, 1993, William Frederick, owner of Highway 51 Auto Sales in Portage, Wisconsin, learned from a friend that J Dorn, an employee of Rocky's Auto Salvage, had machine guns for sale. Frederick had known Dorn for fourteen years and had dealt extensively with Dorn through Dorn's employment at Rocky's Auto Salvage. Frederick contacted the Sheriff's Department in Columbia County, Wisconsin and told Detective Lieutenant Vern Gove about Dorn and the machine guns. Lieutenant Gove relayed the information to Special Agent Doug Dawson of the Bureau of Alcohol, Tobacco, and Firearms ("ATF").

That afternoon, Frederick, acting at Agent Dawson's direction, arranged with Dorn to purchase a machine gun. Dorn brought the machine gun to Frederick's car lot. Frederick paid Dorn $1,000 in government funds for the machine gun. Prior to leaving the car lot, Dorn informed Frederick that he had access to more machine guns. After Dorn left, Frederick turned the machine gun over to Agent Dawson, who had surveilled and videotaped the transaction. Agent Dawson examined the machine gun and determined that it was a Czechoslovakian, Model 61 (Scorpion), 7.65 mm submachine gun.

On December 13 or 14, 1993, Frederick made arrangements with Dorn to purchase another Czechoslovakian, Model 61 (Scorpion), 7.65mm submachine gun. On December 15, 1993, Dorn brought the machine gun to Frederick's car lot. Frederick paid Dorn $1,000 in government funds for the machine gun.

On December 17, 1993, ATF agents set up a video camera in Frederick's office at the car lot. Dorn arrived at the car lot with two firearms: a Quality Parts Company/Bushmaster, Model XM15–E2S, .223 caliber carbine machine gun, and a Quality Parts Company/Bushmaster, Model XM15–E2S, .223 caliber semi-automatic rifle. Frederick introduced Dorn to Agent Dawson, who posed as a potential customer, and the three men

Timothy O'Shea (argued), Office of U.S. Atty., Madison, WI, for plaintiff-appellee.

Bill Ginsberg, Rick B. Meier (argued), Mandell & Ginsberg, Madison, WI, for defendant-appellant.

Before CUMMINGS, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

J. Dorn appeals from a 46–month sentence following a plea of guilty to one count of unlawfully possessing a submachine gun in violation of 18 U.S.C. § 922(o)(1). Dorn argues that the district court erred when it increased his base offense level by two levels

entered Frederick's office. Dorn explained to Agent Dawson that the machine gun was fully automatic, but, if Agent Dawson preferred the rifle, Dorn would switch the parts so the rifle fired automatically. Agent Dawson chose the machine gun and gave Dorn $1,600 in government funds. At the conclusion of this transaction, Dorn claimed that he could obtain plastic explosives for Agent Dawson and offered to do so. Dorn also told Frederick and Agent Dawson about an incident where he acted as an "enforcer" for an unnamed individual by breaking the arms of another man. Dorn indicated that he would be unavailable for a couple of weeks for a number of reasons, including that he was going to Washington State on an "enforcer" trip to "give a message" to another person.

On February 16, 1994, Special Agent Dawson confronted Dorn and identified himself as an ATF agent. Dorn agreed to participate in an interview with Agent Dawson. During the interview, Dorn advised Agent Dawson of his weapons source, and stated that he sold the three machine guns for a third party and personally profited from the sale of the third gun only.

On March 6, 1994, Frederick received three anonymous telephone calls at his home in the early morning hours. The first call was placed at 3:21 a.m. The caller, whom Frederick identified as Dorn's nephew, Demian Decorah, who lived with Dorn, swore at Frederick, referred to a prior disagreement, and told Frederick that he would "kick [Frederick's] ass." The second call was placed at 3:50 a.m. This caller, whom Frederick identified as Dorn, said, "How you doin?". Minutes later, the same person called back and asked again, "How you doin?".

On March 8, 1994, Dorn was charged in a one-count information with unlawful possession of a machine gun in violation of 18 U.S.C. § 922(*o*)(1). Dorn waived indictment and entered a plea of guilty pursuant to a written plea agreement. A presentence investigation was ordered, and Dorn was interviewed by Probation Officer Helen Healy Raatz. In the initial interview, Dorn denied to Raatz that he made any telephone calls to Frederick, and denied that he asked his

nephew to do so either. Dorn stated that when he realized that his nephew called Frederick, he cut the telephone line. In a second interview, Dorn stated that he pulled the telephone out of the wall.

On May 2, 1994, the district court held a sentencing hearing. Government informant Frederick was the only witness at the hearing. Frederick testified that he set up the machine gun sales resulting in Dorn's prosecution and described the three telephone calls he received on March 6, 1994. Frederick testified that Dorn's nephew placed the first call and that Dorn placed the second and third calls. Frederick recognized Dorn's voice because Frederick regularly bought parts from Rocky's Auto Salvage, where Dorn worked, and had spoken with Dorn on the telephone over five hundred times. Frederick's testimony was corroborated when Dorn's nephew admitted that he placed one telephone call to Frederick. Furthermore, telephone company records showed that three calls were placed from Dorn's home to Frederick's home on the morning of March 6, 1994.

The district court calculated Dorn's base offense level at 18. U.S.S.G. § 2K2.1(a)(5). The base offense level was increased by one level because Dorn's offense involved three or more firearms, U.S.S.G. § 2K2.1(b)(1)(A), and by two levels for obstruction of justice, U.S.S.G. § 3C1.1. The district court found that the obstruction enhancement was warranted for two reasons. First, Dorn gave materially false information to probation officer Raatz when Dorn told Raatz that he did not call Frederick on March 6, 1994. Second, Dorn, with his nephew, threatened Frederick in retaliation for Frederick informing on Dorn. The district court stated:

> Well, I am going to enhance the guideline range for the offense level for Mr. Dorn's attempt to retaliate against Mr. Frederick for giving information to law enforcement officers about him and perhaps for setting him up in the purchase of these machine guns. I think it is a close question. It does sound like a situation in which Mr. Dorn had been drinking and perhaps Mr. Decorah as well and they thought of this idea; but if that were the only thing that

happened, it might be possible to overlook it. I think, however, when you add to it Mr. Dorn's falsehood to Ms. Raatz about whether the phone calls were made, on either basis, there is a reason for enhancing the offense level.

At Dorn's request, the district court clarified its findings:

There are three ways to obstruct justice under the sentencing guidelines under 3C1.1. One is intimidating a witness. That did not happen in this case. Mr. Frederick had already talked to the law enforcement people. That wasn't involved. The second way is to provide a materially false statement to a probation officer. Mr. Dorn did that when he said he did not make the telephone calls on March 6. The third way is to retaliate against a witness, and I found that Mr. Dorn—that is what his motive was when he made the phone calls.

With an adjusted base offense level of 21 and a criminal history category of I, Dorn faced a sentencing range of 37 to 46 months. The district court sentenced Dorn to the maximum term of imprisonment, 46 months, to be followed by a three-year term of supervised release. This appeal followed.

## II.

We review for clear error the district court's findings that Dorn obstructed justice under § 3C1.1. *United States v. Thomas*, 11 F.3d 1392, 1399 (7th Cir.1993). We review the district court's application of the Guidelines to the facts with due deference. *Id.*

Section 3C1.1 requires a two-level increase in a defendant's base sentencing level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the ... sentencing of the instant offense." U.S.S.G. § 3C1.1. Application Note 3(h) of Section 3C1.1 provides that the enhancement applies if a defendant provided "materially false in-

formation to a probation officer in respect to a presentence or other investigation for the court." *Id.*, comment. (n. 3(h)). "Material" information is "information that, if believed, would tend to influence or affect the issue under determination." *Id.*, comment. (n. 5). Application Note 3(i) of Section 3C1.1 provides that the enhancement also applies to "conduct prohibited by 18 U.S.C. §§ 1501–1516," which includes retaliation against a government informant. *See id.*, comment. (n. 3(i)).

■ Dorn contends that the district court clearly erred in finding that he engaged in retaliatory conduct prohibited by 18 U.S.C. § 1513.[1] Dorn argues that he "simply placed 'crank calls' to [Frederick], and asked how [Frederick] was 'doing,'" conduct that neither caused nor threatened to cause bodily injury. The record belies this argument and shows that Dorn, acting with his nephew, threatened Frederick physically with the intention of retaliating against Frederick for informing on Dorn. All three calls were placed from Dorn's phone; all three calls were placed in the middle of the night; and all three calls were placed within a half-hour time span. Dorn's nephew made the first call to Frederick at 3:21 a.m. and threatened to "kick [Frederick's] ass." The two follow-up calls made by Dorn thirty minutes later, in which Dorn asked Frederick how he was doing at 3:50 and 3:52 a.m., obviously did not spring from a sudden concern for Frederick's well-being. Rather, common sense indicates that Dorn followed-up his nephew's threatening call so Frederick would know that the threat came from Dorn himself. *See United States v. Barnett*, 939 F.2d 405, 407 (7th Cir.1991) (district judges, in making factual findings under Section 3C1.1, "are not required to 'divorce themselves from common sense or to ignore what is perfectly obvious'") (quoting *United States v. Akitoye*, 923 F.2d 221, 229 (1st Cir.1991)). The district court therefore did not commit clear error in

---

1. The witness retaliation statute provides, in pertinent part: "[w]hoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, *or threatens to do so*, with intent to retaliate against any person for ... any information relating to the commission or possi-

ble commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings given by a person to a law enforcement officer; or attempts to do so, shall be fined not more than $250,000 or imprisoned not more than ten years, or both." 18 U.S.C. § 1513(a)(2) (emphasis added).

finding that Dorn's motive for the calls was to retaliate against Frederick, thus justifying an obstruction of justice adjustment under Section 3C1.1 for conduct prohibited by 18 U.S.C. § 1513.

Dorn also contends that the district court clearly erred in finding that he obstructed justice because his denial to probation officer Raatz that he made phone calls to Frederick was no more than a denial of guilt, to which Section 3C1.1 does not apply. While a defendant who exercises his Fifth Amendment privilege against self-incrimination by denying his guilt is protected from the reach of Section 3C1.1, *see, e.g., United States v. Fiala*, 929 F.2d 285, 289–90 (7th Cir.1991); *Barnett*, 939 F.2d at 407, Dorn was not simply exercising his constitutional right when he misled the probation officer. Rather, Dorn told a series of lies to probation officer Raatz concerning his participation in making the threatening telephone calls to Frederick. Dorn stated that he did not call Frederick, did not know his nephew called Frederick, and cut the telephone line or, in his second version, pulled the telephone out of the wall when he realized his nephew was calling Frederick. The district court's factual finding that Dorn was untruthful with probation officer Raatz was based on the evidence adduced at the sentencing hearing (the phone records, the nephew's admission, and Frederick's testimony), and was not clearly erroneous. Furthermore, the false information provided by Dorn was material in that it bore on the applicability of the obstruction of justice adjustment for witness retaliation. In these circumstances, Dorn's material falsehoods to probation officer Raatz in the course of the presentence investigation met the standards of Note 3(h), thus warranting an obstruction of justice adjustment under Section 3C1.1. *See Thomas*, 11 F.3d at 1400 (affirming § 3C1.1 adjustment where defendant provided false information to probation officer about his birth date, high school graduation date, and discharge from the military) (collecting cases); *United States v. Thompson*, 944 F.2d 1331, 1348 (7th Cir. 1991) (affirming § 3C1.1 adjustment where defendant provided false information to probation officer concerning his violation of release condition).

## III.

Dorn's base sentencing level was properly adjusted under Section 3C1.1. The sentence is

AFFIRMED.