**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tyrone A. JOHNSON, Defendant–
Appellant.**

No. 93–3412.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1994.

Decided Jan. 30, 1995.

Michael C. Carr, Asst. U.S. Atty., Christopher K. Wells, Asst. U.S. Atty. (argued), Benton, IL, for plaintiff-appellee.

Terence Niehoff, St. Louis, MO (argued), for defendant-appellant.

Before POSNER, Chief Judge, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Tyrone Johnson pleaded guilty to three counts of knowingly and intentionally distributing cocaine, one count of conspiring to distribute cocaine, and one count of using extortionate means to collect an extension of credit. The district court sentenced Johnson to 360 months imprisonment on the conspiracy count and a concurrent sentence of 240 months on the four other counts. Johnson appeals his sentence, claiming that the district court erred in calculating the quantity of

drugs involved in his offense and in enhancing his sentence for obstructing justice and for physically restraining the victim of his extortion crime. We conclude that the district court did not err in calculating the amount of drugs involved in the offenses or in enhancing Johnson's sentence for obstruction of justice. We also conclude, however, that the district court's decision to enhance Johnson's sentence for physically restraining his victim is unsupported in the record. We, therefore, vacate and remand for resentencing.

## I. Background

Tyrone Johnson ran a drug ring out of his dance club, the "Steppin' Out Disco," in Mount Vernon, Illinois. Following an eighteen-month investigation, federal officers arrested Johnson. Shortly thereafter, a federal grand jury returned a five-count superseding indictment. Count one charged Johnson with knowingly and intentionally distributing cocaine on August 29, 1991. Count two charged him with knowingly and intentionally distributing cocaine on September 13, 1991. Count three charged him with knowingly and intentionally distributing cocaine on October 29, 1991. Count four charged Johnson with using extortionate means to collect an extension of credit and to punish a person for the non-repayment of an extension of credit. Count five charged Johnson and others with conspiring to knowingly and intentionally distribute cocaine.

The charges set forth in count four of the indictment stem from Johnson's attempt to collect a drug debt from one of his customers, Berk Cunningham. On the night in question, Berk Cunningham met Johnson at the Steppin' Out Disco to discuss Cunningham's outstanding drug debt. Cunningham brought along a potential customer, hoping that the prospect of a new client would convince Johnson to forgive his debt. Johnson was not so inclined. Instead, Johnson pulled a gun and began yelling "I ought to kill you." Johnson and three of his cohorts then began beating Cunningham. This beating lasted for fifteen to twenty minutes and Cunningham was severely injured as a result. Based on these events, Johnson was charged with

using extortionate means to collect an extension of credit and to punish a person for the non-repayment of an extension of credit in violation of 18 U.S.C. §§ 891 and 894.

Johnson pleaded guilty to all charges. For sentencing purposes, the district court grouped together the cocaine offenses charged in counts one through three and five (the "group one offenses"). The district court then calculated Johnson's base offense level for the group one offenses at 32, based on its finding that the amount of cocaine involved totalled more than five but less than fifteen kilograms. The district court then increased Johnson's offense level two points because a firearm was involved in the commission of the offenses, four levels due to Johnson's supervisory role, and two levels for obstruction of justice. This resulted in an adjusted offense level for the group one offenses of 40. The district court then set Johnson's base offense level for count four—the group two offense—at 20. The district court enhanced this base offense level by four levels because a dangerous weapon was used during the offense and five levels because Cunningham sustained severe bodily injury as a result of the beating. The district court also enhanced the offense level for this count two levels because of Johnson's supervisory role and two levels because Johnson had physically restrained Cunningham while committing the offense. This resulted in an adjusted offense level of 33 for the group two offense. The district court then made a multiple-count adjustment pursuant to section 3D1.4 resulting in a combined adjusted offense level of 41. After reducing the offense level for acceptance of responsibility, Johnson's total offense level was 39, which resulted in a sentencing range of 292 to 365 months. The court sentenced Johnson to 360 months imprisonment on the conspiracy count and a concurrent sentence of 240 months on the extortion and individual distribution counts. Johnson appeals his sentence.

## II. Analysis

On appeal, Johnson claims that the district court erred in calculating the quantity of drugs involved in his offense. He also as-

serts that the district court erred in enhancing his sentence for obstruction of justice and for physically restraining Cunningham. We consider each issue in turn.

### A. Quantity of Drugs

■ Johnson claims that the district court erred in calculating the quantity of drugs involved in his offenses as being more than 5 but less than 15 kilograms of cocaine. We review this finding for clear error. *United States v. Paters,* 16 F.3d 188, 191 (7th Cir. 1994).

■ At the sentencing hearing, the government offered evidence of the amount of drugs involved through FBI Special Agent Isaac Bratcher. Bratcher presented a one-page chart outlining the amount of cocaine involved in the conspiracy. This chart summarized the evidence presented at trial concerning the amount of cocaine involved in Johnson's conspiracy and listed twelve separate quantities of cocaine totaling more than 7,915 grams. This chart was admitted as government's Exhibit 5. After reviewing Exhibit 5, the district court found that the quantity of cocaine involved was "certainly more than five kilograms." Based on this evidence, we cannot say that the district court was clearly erroneous in determining that more than 5 but less than 15 kilograms of cocaine were involved.[1] We, therefore, affirm the district court's calculation of the drugs involved in Johnson's offense.

### B. Obstruction of Justice

Johnson also challenges the district court's enhancement of his offense level for obstruction of justice, pursuant to section 3C1.1. "Section 3C1.1 requires a two-level increase in a defendant's base sentencing level '[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the ... sentencing of the instant offense.'" *United States v. Dorn,* 39 F.3d 736, 737 (7th Cir.1994) (quoting U.S.S.G. § 3C1.1). Application Note 3(a) of the Commentary provides that an obstruc-

tion of justice enhancement is appropriate for "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so."

■ In this case, the district court found that Johnson had threatened John Twiggs. John Twiggs was a cooperating witness who worked undercover for the government during the government's investigation of Johnson. Twiggs had been trying to buy cocaine from Johnson. He was unsuccessful, however, and instead decided to try his luck with one of Johnson's co-conspirators. This attempt was successful, as he was able to purchase cocaine from co-conspirator Stacy Shipp. After purchasing the cocaine, Twiggs turned it over to drug task force agent Steve Lamar. Johnson later confronted Twiggs, saying: "You was seen with Steve Lamar and that it wasn't healthy."

Based on this threat, the district court enhanced Johnson's sentence two levels for obstruction of justice, stating:

> the obstruction of justice goes to the threats, the intimidation, and specifically the threat against the witness John Twiggs where he was seen in a car with officer Lamar and later Mr. Johnson told him to the effect that I hope you aren't doing what I think your doing because that's unhealthy ... I think anybody in their ordinary meaning of that would take that as a threat.

■■ We review a district court's finding that a defendant obstructed justice for clear error. *United States v. Wright,* 37 F.3d 358, 361 (7th Cir.1994). Johnson asserts that the district court's finding was clearly erroneous in this case because he did not know that Twiggs was a government witness. We disagree. A threat to a potential witness is sufficient to warrant an enhancement under section 3C1.1, as long as the statement was intended to threaten, intimidate or unlawfully influence that person. *United States v. Cherif,* 943 F.2d 692, 703 (7th Cir.1991); *United States v. Sanchez,* 35 F.3d 673, 680

---

**1.** We note that in *United States v. Phillips,* 37 F.3d 1210, 1215 (7th Cir.1994), Johnson's co-conspirators also challenged the district court's determination that more than five but less than fifteen grams of cocaine were involved in the Johnson conspiracy and this court affirmed that determination.

(2d Cir.1994). Johnson also makes this claim, namely that his statement to Twiggs was not a threat. The district court disagreed, however, finding that the ordinary meaning of Johnson's statement "[y]ou was seen with Steve Lamar and that it wasn't healthy" constituted a threat. This finding was not clearly erroneous.

### C. Physical Restraint

Johnson next challenges the district court's physical restraint enhancement. In calculating Johnson's sentencing level for the extortion charged in count four of the indictment, the district court enhanced Johnson's sentence two levels for physical restraint pursuant to section 3A1.3 of the Sentencing Guidelines. Section 3A1.3 provides: "If a victim was physically restrained in the course of the offense, increase by 2 levels." The Guidelines define "physically restrained" as "forcible restraint of the victim such as being tied, bound, or locked up." U.S.S.G. § 1B1.1(i).

The district court gave Johnson a physical restraint enhancement, simply finding that Johnson had physically restrained Cunningham while committing the extortion charged in count four. The district court, however, did not explain how this restraint occurred. On appeal, the government presented the following rationale for the physical restraint enhancement: "The appellant, his gun and his assistants presented a physical barrier which prevented Berk Cunningham from leaving the Steppin' Out Disco. Johnson used his assistants and dangerous weapons to inflict bodily injury on Cunningham which served as the figurative lock and key, physically restraining Cunningham." But this rationale does not match the court's actual findings. Rather the court found that Johnson used a dangerous weapon during the offense, for which he received a four-level enhancement, and that he inflicted serious bodily injury, for which he received a five-level increase. To be eligible for the additional two-level enhancement for physical restraint the court had to find that Johnson (or his "assistants") did something beyond pointing a gun and inflicting injury. If the evidence showed that Johnson's "assistants" surrounded Cunningham in such a way as to

form a human wall, perhaps this could be compared to a locked room or a corner from which he could not escape without great effort or risk. Of course if they physically held him while Johnson inflicted injury as part of the course of "using extortionate means to collect" the court could find physical restraint and enhance the sentence.

Apparently Cunningham was not actually "tied, bound or locked up" but he could have been otherwise physically restrained in addition to the violations for which his sentence was enhanced. On the record before us the two-level enhancement appears to be impermissible double counting for the already enhanced violations of using a weapon and inflicting serious bodily injury. *United States v. Haines,* 32 F.3d 290, 293 (7th Cir.1994) ("Impermissible double counting occurs when a district court imposes two or more upward adjustments within the guidelines range, when both are premised on the same conduct."). On remand the court must specifically identify the additional conduct that would constitute physical restraint. We accordingly vacate Johnson's sentence and remand for resentencing.

On remand, the district court is free to begin anew in sentencing Johnson. It may well be that the duration of Johnson's sentence will not change, even if there is insufficient justification for the physical restraint enhancement. This is evidenced by the sentencing transcript where the district court stated that there were clear grounds for an upward departure in Johnson's sentence, based on his participation in a murder, a jail break, and a home invasion, but that there was no need to depart because the sentencing range of 292 to 365 months provided a sufficient sentence of 360 months. Without the physical restraint enhancement, however, the sentencing range would be 262–327 months, and the district court may then decide that an upward enhancement is warranted. And that decision is within its discretion. *United States v. Smith,* 930 F.2d 1450 (10th Cir.1991) (absent an instruction from the appellate court limiting the scope of remand, the district court may begin anew in sentencing the defendant). *Accord United States v. Moored,* 38 F.3d 1419, 1422 (6th Cir.1994).

*Compare United States v. Severson,* 3 F.3d 1005, 1013 (7th Cir.1993) (wherein this court limited the scope of resentencing on remand).

For the foregoing reasons, we vacate Johnson's sentence and remand for resentencing.