59 F.3d 173
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick B. WALLACE, Defendant-Appellant.
 No. 94-2318.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 16, 1995.
Decided June 22, 1995.
 
 Before Bauer, Easterbrook and Manion, Circuit Judges.
 
 ORDER
 
 1
 Patrick B. Wallace pleaded guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 846 and 841(b)(1)(A), and was sentenced to 200 months imprisonment, 5 years supervised release, and ordered to pay an assessment of $50.00. Wallace's attorney filed a notice of appeal and an appellate brief, but included a letter with his appellate brief asking to withdraw as counsel because he considers any issue raised on appeal to be frivolous. See Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir. 1985). In his appellate brief, counsel argues that the district court erred during sentencing in its determination of the quantity of drugs for which Wallace was liable. However, his letter did not explain why this argument was frivolous as required by Edwards, but merely concluded in one line that counsel believes the argument to be frivolous. Anders was designed to allow attorneys to avoid the ethical violation of submitting a frivolous argument by documenting in their briefs why any argument raised on appeal would be frivolous, and not to make a frivolous argument and then request to be recused as counsel.
 
 
 2
 Pursuant to Circuit Rule 51(a), we notified Wallace of his attorney's actions. Wallace moved to extend the time so that he could file a response, which we granted, but then never responded. Because we believe there is no meritorious issue to appeal, we grant counsel's motion.
 
 BACKGROUND
 
 3
 On January 6, 1994, Wallace pleaded guilty to conspiring with Willis Gragg, David Garcia, Harrison Richard King, and three other unindicted coconspirators to distribute cocaine from about 1989 until at least mid-1991. Wallace admitted to have obtained the cocaine from Chicago, Illinois, from Garcia and later Gragg, and to have pooled his money with King and others to buy higher volumes of cocaine at lower prices. In his plea agreement. Wallace reserved the right to contest at sentencing the quantity of cocaine involved in the conspiracy.
 
 
 4
 The Presentence Investigation Report ("PSR") stated that Wallace was accountable for 8.5 kilograms of cocaine arising from three instances: 2 kilograms in September, 1990, 4 kilograms in early 1991, and 2.5 kilograms in April, 1991. Wallace challenged the first amount and the district court determined that Wallace was not accountable for it. Wallace accepted the second amount but challenged the third amount.
 
 
 5
 The third amount, 2.5 kilograms in April, 1991, arose from a trip Wallace took with King, Hill, and Eric Kizer to Chicago. According to the PSR, Wallace and King each brought $30,000 to buy between two and one-half and three kilograms of cocaine. Upon arriving in Chicago, Wallace placed a call from a telephone booth and waited until someone called back. After the call, the four went shopping, then drove to a rendezvous and raised the hood of their car. A short while later, a runner came and Wallace gave the runner $60,000. Law enforcement officers stopped the runner and took the money, and then stopped and questioned King, Kizer, Hill and Wallace. The four were subsequently released.
 
 
 6
 At the sentencing hearing, Wallace challenged the third amount claiming that he did not intend to buy drugs during that trip, did not bring $30,000, and went to Chicago merely do to some shopping. In support, Wallace presented file notes from an interview between Wallace's counsel and Kizer. Kizer, who also went on the trip to Chicago, stated during the interview that the purpose of the trip was to do shopping and not to buy drugs. Unfortunately, Kizer was murdered before the sentencing hearing. Wallace asserts that because Kizer was never arrested or charged with drug conspiracy, he was the only credible source of information.
 
 
 7
 The district court also considered a Drug Enforcement Agency ("DEA") report stating that according to Hill, the purpose of the last Chicago trip was to procure drugs, Wallace had $30,000 with him, and the money was confiscated by DEA agents. Wallace challenged this report arguing that Hill was not a credible informant. In support, Wallace noted that Hill's grand jury testimony had minor inconsistencies with the DEA report.
 
 
 8
 The district court also considered another DEA report in which Frank Stephenson and Michael Tate supported the story given by Hill. Wallace argues that Stephenson and Tate are not credible because they proffered their statements only after they were housed in jail together and were convicted of drug conspiracy charges.
 
 
 9
 The district court found Wallace accountable for the 2.5 kilograms of cocaine. Thus, Wallace was found liable for a total of 6.5 kilograms of cocaine. After applying the relevant enhancements and reductions, Wallace's net offense level was 31 and his criminal history category was VI, making the imprisonment range 188 to 235 months. The district court sentenced Wallace to 200 months imprisonment.
 
 ANALYSIS
 
 10
 We will grant an Anders motion only when we are satisfied that counsel has conscientiously examined the case, United States v. Kellum, 42 F.3d 1087, 1096 (7th Cir. 1994) (citing Anders, 386 U.S. at 744), and that the potential issues on appeal are groundless in light of legal principles and rulings. Id. (citing United States v. Eggen, 984 F.2d 848, 850 (7th Cir. 1993)).
 
 A. Guilty Plea Hearing
 
 11
 Our independent review of the plea hearing transcript reveals that the district court followed the procedures outlined in Federal Rule of Criminal Procedure 11. The district court questioned Wallace and concluded that Wallace's guilty plea was made knowingly, intelligently, and voluntarily, with the assistance of counsel, and with a full understanding of the nature of the charge against him and of the constitutional rights he would be waiving by pleading guilty. Fed.R.Crim.P. 11(c)(1), (3)-(5), (d). The district court also informed Wallace that he could be sentenced to a maximum of life imprisonment if the court determined that the amount of cocaine was more than 5 kilograms, and a minimum of five years imprisonment. Plea Hr'g Tr. at 9; Fed.R.Crim.P. 11(c)(1) (judge must explain the consequences of a plea of guilty). There is no potentially meritorious issue for appeal arising out of Wallace's guilty plea hearing.
 
 B. Sentencing
 
 12
 During the sentencing hearing, Wallace received the assistance of counsel and had an opportunity to review and comment on the presentencing report. The district court informed Wallace that he had a right to appeal his sentence. Thus, Wallace received the procedural protections provided in F.R.Crim.P. 32.
 
 
 13
 The only issue identified by counsel as a possible issue on appeal is whether the district court erred in determining the amount of cocaine. Before we examine this issue, though, we must first consider whether the district court erred in applying the Sentencing Guidelines. See 18 U.S.C. Sec. 3742(a); Williams v. United States, 503 U.S. 193, 198-99 (1992). The district court found Wallace accountable a total of 6.5 kilograms of cocaine, which amounts to a base offense level of 32. The district court enhanced the offense level by two for Wallace's role as a leader or organizer of the conspiracy, see U.S.S.G. Sec. 3B1.1(c), and two for obstruction of justice, see U.S.S.G. Sec. 3C1.1, and then reduced the offense level by two for acceptance of responsibility, see U.S.S.G. Sec. 3E1.1(a), and one for timeliness of his plea. See U.S.S.G. Sec. 3E1.1(b). Finally, pursuant to a government motion under Sec. 5K1.1, the district court reduced Wallace's offense level by two for providing substantial assistance to the government. The net offense level was 31. Wallace's criminal history category was VI, making the imprisonment range 188 to 235 months. The district court sentenced Wallace to 200 months imprisonment. We conclude that the district court correctly applied the Guidelines to Wallace's case. Furthermore, we would lack jurisdiction to review any challenges to the district court's decision to downward depart or its discretion to sentence Wallace within the sentencing range. See United States v. Schechter, 13 F.3d 1117, 1119 (7th Cir. 1994); United States v. Gio, 7 F.3d 1279, 1291 (7th Cir. 1993).
 
 
 14
 Next we consider whether an appeal of the district court's determination of the amount of cocaine is meritless. Under U.S.S.G. Secs. 1B1.3(a)(2) and 3D1.2(d), a district court may increase a defendant's base offense level to account for "relevant conduct," which includes drugs from any transactions of which he was aware or should have reasonably foreseen. United State v. Phillips, 37 F.3d 1210, 1213 (7th Cir. 1994). The district court determines the quantity of drugs related to the convicted offense by a preponderance of the evidence. United States v. Shorter, Nos. 94-1465 & 94-1663 (7th Cir. May 4, 1995). We accept a sentencing court's determination of the quantity of drugs absent clear error. United States v. Johnson, 46 F.3d 636, 637 (7th Cir. 1995).
 
 
 15
 In his appellate brief, counsel argues that the district court erred in determining the amount of cocaine because it relied on the DEA report of Hill, Tate, and Stephenson. Counsel argues that Hill is not credible because his grand jury testimony conflicts with his DEA report in the amount of money Wallace brought to Chicago, the amount of cocaine Wallace was meant to purchase, the number of trips Wallace made to Chicago, whether Kizer was a party to the trip, and the description of the events. He suggests that Hill invented the drug transaction in order to benefit at Hill's sentencing hearing. Counsel also notes an irregularity in the DEA report, which states that it was prepared on November 24, 1992 and that it includes information from an interview conducted on December 16, 1992.
 
 
 16
 The issue is a credibility determination between Wallace and Kizer, who is dead, and Hill, Tate and Stephenson, who counsel argues are not credible. However, because we review the district court's decision for clear error, counsel maintains the issue is meritless. We agree. The district court had a reasonable basis for determining that Wallace was accountable for the 2.5 kilograms of cocaine, therefore there was no clear error. See Anderson v. City of Bessemer, 470 U.S. 564, 575-76, 105 S. Ct. 1504, 1512 (1985) (if evidence is not implausible or internally inconsistent, credibility determination can virtually never be clear error). Therefore an appeal of this issue would be frivolous.
 
 CONCLUSION
 
 17
 As the record reveals no other arguably meritorious issue for appeal, counsel's motion to withdraw is GRANTED and the appeal is DISMISSED as frivolous.