In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-4043

UNITED STATES OF AMERICA,

*Plainitff-Appellee,*

*v.*

ADONIS HOUSE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 631-2—**Virginia M. Kendall**, *Judge.*

ARGUED DECEMBER 2, 2008—DECIDED DECEMBER 31, 2008

Before CUDAHY, FLAUM, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge.* A federal jury convicted Adonis House of two counts of distribution of crack cocaine, and the district court sentenced him to 188 months in prison, followed by five years of supervised release. On appeal, House raises three challenges to his sentence. First, he contends that the district court improperly made a two-point adjustment to his base offense level under the United States Sentencing Guidelines for obstruction of justice. Second, he contends that the district court failed

to consider the disparity in sentences between crack cocaine and powder cocaine under the sentencing guidelines. Third, he contends that the district court did not correctly apply the sentencing factors in U.S.S.G. § 3553(a). For the following reasons, we affirm the conviction and sentence of the district court.

## I. Background

Adonis House was arrested and prosecuted as part of a broader federal narcotics investigation in Chicago. House's involvement began in February 2005, when he met with Sylvester Avery, a man who claimed that he was looking to get into the cocaine trafficking business, at a barber shop on Madison Street on the west side of Chicago. Avery asked House if he knew of anyone who could sell him narcotics, and House apparently told Avery that he would try to find out who could supply him. What House did not know at this time was that Avery was working as a government informant pursuant to a cooperation agreement. Later, in March 2005, Avery introduced House to John D. Morton, supposedly a high-level dealer from Madison, Wisconsin, but in fact the undercover identity of Mark Horton, a Supervisory Special Agent with the FBI. During the course of the next month, Avery and House talked numerous times over the phone and met at the barber shop; eventually, they agreed that House would sell Avery and Horton four-and-one-half ounces of crack cocaine for $2600 to $2700.

On April 5, 2005, Horton and Avery caught up with House at the barbershop for a prearranged meeting.

Horton gave House $2700 in cash to purchase four-and-a-half ounces of crack cocaine. House and Avery then drove to another location where they met with LaPriest Gary, who was supplying the crack cocaine. Gary, Avery, and House then went to a third location, where Gary obtained about four ounces of crack, which he exchanged for $2350 from House and Avery. Gary then drove Avery and House back to the barbershop, where House gave Avery a white bag filled with crack cocaine. Avery waited for Horton to leave the barbershop, and the two then drove away in Horton's undercover car (the crack cocaine was seized by the FBI at that time). Later, House met Avery and gave him $200 for setting up the deal.

On April 11, 2005, Avery called House about setting up a second drug deal. House told Avery that he had another source for crack cocaine, but that the price would be higher. On May 20, 2005, Avery, Horton, and House met at the barbershop on Madison Street and discussed buying four-and-a-half ounces of crack. House told Avery and Horton that his source had that much available for purchase, and that he would only need to drive over to the supplier in order to get it. Horton then gave Avery $2900 for the purchase. When House told Avery and Horton he would need to take the money with him, Avery decided to go to the supplier's location as well. House, Avery, and a third man, Frederick Young, then drove away from the barbershop. Avery gave House the $2900, and while Avery apparently did not witness an exchange between House and his supplier, House and Avery returned to the barbershop with crack cocaine, which was then turned over to Horton. Later that same

day, House met Avery and gave him $250 for setting up the second deal.

Horton and House apparently spoke twice more, and they discussed the possibility of House supplying drugs for Horton's operation. According to trial testimony, House speculated on the price for as much as nine ounces or a quarter kilogram of crack at a time. However, those discussions and agreements were not part of the charges brought in this case.

On August 31, 2006, a grand jury in the Northern District of Illinois returned an indictment charging House with two counts of knowingly and intentionally distributing cocaine in the form of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A jury trial in House's case began on June 5, 2007, and on June 7, the jury found House guilty on both counts. Sentencing in the case was originally scheduled for August 29, 2007, but was continued twice, first until September 24, and then for November 13. Immediately before the November 13 sentencing hearing, however, House moved to continue sentencing because he was also charged in a separate indictment before Judge Matthew Kennelly in the Northern District of Illinois, and House wanted the district court in this case to consider the pending charges as part of his relevant conduct for sentencing. The district court granted House's motion, and held a sentencing hearing on December 13, 2007. The jury verdict in House's trial included a special jury form to include a determination of drug amounts, and based on the amounts in the present case as well as the separate indictment, the

district court calculated a base offense level of 34. The district court then imposed a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, finding that House had improperly attempted to influence Avery's testimony in the case. Working from the new base offense level of 36, the district court sentenced House to 188 months in prison, followed by five years of supervised release. This appeal followed.

## II. Discussion

House raises three issues in his appeal. First, he claims that the district court should not have imposed a two-level sentencing enhancement for obstruction of justice, as House only intended to confirm that Avery would testify at trial, rather than to obstruct justice by persuading Avery not to appear. Second, he seeks a remand so that the district court can consider the disparity between sentences for crack cocaine and powder cocaine offenses in the sentencing guidelines. Third, House argues that his sentence was unreasonable, given that he has no criminal history, is not a threat to re-offend, and does not present a danger to his community.

### A. Whether the district court properly applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.

House first argues that the district court improperly granted a two-level enhancement to his base offense level for obstruction of justice in violation of U.S.S.G. § 3C1.1.

That portion of the sentencing guidelines instructs judges that:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The section requires, first, a finding that the defendant endeavored to obstruct or impede the administration of justice, and that the obstructive conduct related to the offense of conviction or a closely related offense. We review de novo whether the district court made adequate findings to support an enhancement for obstruction of justice, while we review the underlying factual findings for clear error. *United States v. Carrera*, 259 F.3d 818, 831 (7th Cir. 2001); *see also United States v. Gage*, 183 F.3d 711, 715 (7th Cir. 1999).

The district court first learned of the alleged obstructive conduct in this case on the first day of trial, when the government informed the court that House had contacted Avery through Mary Brown, a friend of House's from his neighborhood. A few months before House's trial, he had learned through discovery documents that Avery was a cooperating witness with the government and was supposed to testify against him at trial. Sometime after that, Brown and her brothers encountered Avery at the scene of a traffic accident on Western Avenue in

Chicago. According to the testimony of Anita Dunn, an FBI agent who investigated the incident after Avery reported it to the government in this case, Brown approached Avery at the scene of the accident, asked if he was planning on testifying against House, and asked him not to testify. Dunn also claims that she spoke to Brown, who gave a similar account of events: "She said she confronted [Avery]. She asked him about testifying and, I believe, not to testify against Mr. House." Sen. Tr. at 19. According to Dunn, this was all done at House's instruction: Brown approached Avery because "Mr. House asked her to locate Mr. Avery and ask him not to testify against him." *Id.*

House disputes this version of events, claiming that he only asked Brown to speak to Avery about whether he would testify because Brown herself was skeptical about Avery's cooperation, and House believed that Brown could tell from Avery's reaction to her question whether or not he really intended to appear in court. He also claims that his intent was only to confirm that Avery would in fact be testifying at his trial.[1] On appeal, he first

---

[1] The parties argue inconclusively about the plausibility of this second explanation for the confrontation. The government argues that Avery's identity was firmly established in discovery documents and that this confrontation occurred shortly before trial when it was clear that Avery would testify. House argues that the time of the confrontation has never been established and so the confrontation occurred at a point when House was still identifying the government's primary witnesses.

(continued...)

questions the reliability of the government's evidence supporting the enhancement, as it was made on the basis of hearsay testimony from Dunn and neither Avery nor Brown appeared at the sentencing hearing to explain what happened. He next argues that the testimony on its own is insufficient to establish that he had the intent to obstruct justice. In support of this argument, House points out that Dunn stated during her direct examination that Brown did not "believe that [House] wanted her to intimidate Mr. Avery," Sen. Tr. at 20-21, and during her cross-examination that Brown did not say that House asked her to speak with Avery in order to intimidate him.

House's first objection is misplaced. While it is true that Dunn's recollection of her interviews with Brown and Avery was hearsay testimony, sentencing courts are allowed to consider hearsay testimony. *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005) (citing *Williams v. New York*, 337 U.S. 241 (1949)). Hearsay testimony is proper as long as it has "sufficient indicia of reliability to support its probable accuracy." *United States v. Otero*, 495 F.3d 393, 402 n.5 (7th Cir. 2007). House is left to argue that while the testimony was properly admissible, it was presumptively unreliable. He claims that this circuit has previously held that "a very strong presumption of

(...continued)

Regardless of the timing of the confrontation, we conclude that the district court had adequate evidence at the sentencing hearing to support a sentence enhancement.

unreliability attaches to statements that are: (1) given with government involvement; (2) describe past events; (3) have not been subjected to adversarial testing." *United States v. Jones*, 371 F.3d 363, 369 (7th Cir. 2004).[2] Dunn's interviews with Avery and Brown, House argues, meet all three characteristics and thus are not sufficiently reliable to form a basis for the sentencing enhancement.

House next argues that even if this court finds that Dunn's testimony was sufficiently reliable, it was insufficient to establish his intent to obstruct justice. This circuit's opinions on the intent requirements of § 3C1.1 "make clear . . . that the burden is on the Government to establish that the defendant acted with specific intent to obstruct justice." *United States v. Dale*, 498 F.3d 604, 609 n.4 (7th Cir. 2007). Making any sort of statement to a wit-

---

[2] This line of cases that House cites is not on point, however. *Jones*, which cited *United States v. Ochoa*, 229 F.3d 631, 637 (7th Cir. 2000), involved a co-conspirator's hearsay statement admitted at trial, and which thus implicated the Confrontation Clause. *Jones*, 371 F.3d at 369. *Ochoa* involved the same set of facts. *Ochoa*, 229 F.3d at 637. The determination of presumptive unreliability is premised on the right of confrontation and upon the fact that it is a co-conspirator's statement, given in a context in which the conspirator would be tempted to shift blame. However, this case is different both because Brown's testimony was not a classic co-conspirator's statement, and because the relevant standard for sentencing proceedings is not the Confrontation Clause, but rather due process. We thus take House's point that we should question the reliability of the statement, without attaching any presumptions of unreliability.

ness is not enough; rather, a defendant must make the statement intending for it to affect whether or not the witness will appear at trial. At the same time, this circuit's cases hold that a mere attempt to influence a witness is enough, regardless of whether it succeeds. *United States v. Wright*, 37 F.3d 358, 362 (7th Cir. 1994). Moreover, the court will use an objective standard to determine whether a given action is an attempt to obstruct justice, rather than evaluating the subjective intent of the defendant. *See United States v. Chatmon*, 324 F.3d 889, 893 (7th Cir. 2003).

House's best argument in this respect is that Dunn's testimony indicated at two points that Brown did not approach Avery with the intent to intimidate him, and that Brown did not believe that House wanted her to intimidate Avery. (He claims instead that he was simply determining whether he was going to testify, and that he was only trying to give his attorney accurate information about the witnesses in the case.) The sentencing guideline does not make attempts to "intimidate" the basis for an enhancement, however, but rather attempts to "obstruct or impede." This is because the obstruction of justice enhancement is designed "not just to prevent miscarriages of justice but also to reduce the burden on the justice system." *United States v. Buckley*, 192 F.3d 708, 710 (7th Cir. 1999). The enhancement thus covers not only threats or intimidation but also "otherwise unlawfully influencing" a witness. *United States v. Johnson*, 46 F.3d 636, 638 (7th Cir. 1995). This circuit has previously held that "unlawfully influencing" a witness means intentionally engaging in conduct "having a natural

tendency to suppress or interfere with the discovery of truth." *Wright*, 37 F.3d at 362.

Thus, House could be liable for an obstruction of justice enhancement merely because Brown asked Avery not to testify against House, provided the evidence established that House intended to have Brown ask Avery not to appear. The bare attempt to persuade a witness not to offer otherwise truthful testimony would indeed be an attempt to unlawfully influence the outcome of the proceeding. The government emphasizes this aspect of Dunn's testimony in their briefs to this court. The district court, in imposing the enhancement, likewise found that "just the attempt to influence or the attempt to persuade another to act in a certain way" was sufficient. Sen. Tr. at 26.

This court's review of the sentencing enhancement thus boils down to the question of whether House intended for Brown to ask Avery not to testify, which itself boils down to the ancillary question of whether the district court had sufficiently reliable evidence of House's intent to justify imposing the sentencing enhancement. This is a factual question that this court reviews only for clear error. We note that the evidence of House's intent was rather thin. According to Dunn's testimony, when House spoke to Brown about Avery he asked her to ask Avery not to testify. Or at the risk of offering a more confusing formulation, Dunn said she believed that House asked Brown to ask that. There is thus only hearsay testimony from a single witness, and not the strongest hearsay testimony, on the crucial question of House's

intent. Nor was Dunn's testimony, which the district court decided to credit, the strongest case that the government could have put on, given that it was hearsay testimony taken without giving the defense a chance to cross-examine either Brown or Avery about the encounter or, crucially, to cross-examine Brown about House's intent with respect to that encounter. Nevertheless, this court will only disturb the district court's factual findings when it is "left with the definite and firm conviction that a mistake has been committed." *United States v. Christ*, 513 F.3d 762, 775 (7th Cir. 2008). While this may not have been the strongest possible case for a sentencing enhancement, this court will not reverse the district court on clear error review merely because it may disagree with its decision. There is evidence from the sentencing hearing that Brown approached Avery at the behest of the defendant and asked him not to testify; and while there may not have been an attempt to intimidate Avery (nobody, at this point, argues that there was) there was an attempt to unlawfully influence his testimony. House presents no reason to question the accuracy of Dunn's testimony aside from the weaknesses inherent in hearsay testimony. During a sentencing hearing, however, the judge only needs to find that the evidence is reliable; in this case, the district court found Agent Dunn's testimony to be credible and used her report to conclude that House attempted to persuade Avery not to testify at trial. There was, consequently, an adequate factual basis for the sentencing enhancement.

**B. Whether the case should be remanded to the district court to apply its discretion under *Kimbrough v. United States* to consider the 100:1 disparity in the sentencing guidelines for crack and powder cocaine.**

House's next contention is that the district court did not exercise the discretion that the Supreme Court granted to district courts in sentencing proceedings to adjust the calculation of a defendant's sentencing range in *Kimbrough v. United States*, 128 S. Ct. 558 (2007). The Court's decision in *Kimbrough* acknowledged the sentencing guidelines contained a disparity between sentences of persons charged with trafficking powder cocaine and those charged with trafficking crack cocaine: "a trafficker dealing in crack cocaine is subject to the same sentence as one dealing in 100 times more powder cocaine." *Id.* at 564. Concluding that district courts did not need to reflect this disparity in their sentencing decisions, the Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 575.

In evaluating the district court's sentencing decision, this court reviews "both findings of fact and applications of the Sentencing Guidelines for clear error." *United States v. Stitman*, 472 F.3d 983, 986 (7th Cir. 2007). When a defendant alleges that the district court made a procedural error in sentencing, such as a legal error in interpreting the guidelines or a failure to appreciate the advisory nature of sentencing guidelines, this court reviews the sentencing procedure de novo. *Id.*

The district court held the sentencing hearing in this case shortly after the Supreme Court handed down its decision in *Kimbrough*. Before imposing sentence, the district court acknowledged its authority to adjust House's sentencing range because of his conviction for trafficking crack cocaine. "And I'm sure you're both aware of the Supreme Court case law that came down in the last two days . . . which enables me to take into account all the different characteristics under 3553 to move lower than these crack guidelines, if necessary." Sen. Tr. at 34. House argues, however, that this statement from the district court was inadequate because it did not consider the 100:1 disparity between the guideline sentences for crack cocaine and powder cocaine offenses, and thus was not a proper application of the core holding of *Kimbrough*.

In support of his argument that this court should remand the case to the district court for resentencing, House cites several cases that this circuit remanded to the district court for resentencing because *Kimbrough* might have affected the district court's sentencing decision. *See United States v. Adefumi*, 279 Fed. Appx. 401 (7th Cir. 2008); *United States v. Padilla*, 520 F.3d 706 (7th Cir. 2008); *United States v. Smith*, 276 Fed. Appx. 497 (7th Cir. 2008). The sentencing proceedings in those cases, however, occurred before the Supreme Court issued its opinion in *Kimbrough*, and the district court was thus unaware of its new discretion. This circuit established a procedure for remanding sentencing decisions in light of *Kimbrough* in *United States v. Taylor*, 520 F.3d 746 (7th Cir. 2008). In *Taylor*, this court determined that a limited remand would be appropriate where an

appeal from a sentencing decision was pending when *Kimbrough* was decided and the district court did not have an opportunity to consider its holding. *Id.* at 747. *Taylor* also holds, however, that remand is not appropriate where the district court was aware of its power under *Kimbrough* but simply chose not to apply it. *Id.* at 747-48.

The government argues that the district court's statement during the sentencing hearing indicated an awareness of its authority under *Kimbrough* to consider a lower sentencing range, but that the district court declined to exercise this discretion when imposing the sentence. This is correct. While the district court could have gone into more detail about *Kimbrough*, the statement from the record shows that it was aware of its discretion in light of that decision. The district court followed the correct sentencing procedure, and thus House's sentence will be overturned only if the decision not to adjust the sentencing range downward was clear error. Because the sentence that the district court imposed is ultimately within the guidelines range and the court acknowledged its discretion to impose a lower sentence if it chose to do so, it was not clear error for the district court to decline to exercise that discretion.

## C. Whether House's 188 month sentence is unreasonable in light of the § 3553(a) sentencing factors.

House finally argues that his 188-month sentence is unreasonable in light of the factors contained in § 3553(a) of the sentencing guidelines. A properly calculated, within-

guidelines sentence is entitled to a presumption of rea-
sonableness, and this court reviews such a sentence
deferentially. *United States v. Hurn*, 496 F.3d 784, 790 (7th
Cir. 2007) (citing *Rita v. United States*, 127 S. Ct. 2456, 2462
(2007)). Section 3553(a) requires a district court, before im-
posing a sentence, to consider among other factors the
nature and circumstances of the offense and the criminal
history of the defendant, the need for deterrence, public
protection, and rehabilitation of the defendant, and the
need to avoid unwarranted sentence disparities.

House cites four factors that justified a sentence below
the guidelines range: his non-existent criminal record, his
low risk of recidivism, his low need for deterrence, and
his lack of danger to the community. With respect to the
first of those four factors, the nature of the offense,
House argues that the district court considered only the
impact that drug dealing as a whole had on his neighbor-
hood, rather than the circumstances of his specific of-
fense. House also argues that he has positive personal
characteristics, such as his lack of a criminal history, that
the district court did not adequately consider. He also
cites the fact that he is a young father as a reason why
he does not need a long sentence to be deterred from a
life of crime, and as a reason why he does not present a
danger to his community.

It appears from the record that the district court con-
sidered the factors in § 3553(a) before imposing sentence.
The court noted four letters written on House's behalf
by family members and friends. Sen. Tr. 30-31. Before
imposing a 188-month sentence (the bottom of the ap-

plicable guideline range) the district court also considered House's culpability in both of the drug dealing transactions. While the court did discuss the impact of drug trafficking as a whole on House's community, it related that discussion back to the nature and circumstances of House's convictions. "[I]t's not just your role in brokering a deal or moving one drug to another. It is your role in setting that image that permeates your community and really robs the youth of your community of any role models to move forward and to break out of the chains of this poverty, this violence, and this drug dealing." Sen. Tr. at 47. Further, the government's evidence at trial indicated that House was highly culpable for the two offenses. "[W]hat [the evidence] presented was not a confused somebody who just happened to stumble upon drug dealing. It's somebody who's been a part of this fabric that's ruining this community and keeping young men down in that community . . . ." Sen. Tr. at 48-49.

The district court likewise noted the possibility of House's rehabilitation in prison, his lack of criminal history, and the fact that he was not a threat to re-offend. *See* Sen. Tr. at 49. The district court thus considered the factors that House now stresses on appeal. They did not lead the district court to impose a sentence below the guidelines range, as he had hoped. Nevertheless, while House may argue that a lighter sentence may have been justified, all things considered, the district court did not err by sentencing House to a term at the low end of the applicable guidelines range.

### III. Conclusion

For the foregoing reasons, the conviction and sentence of the district court are AFFIRMED.