NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 10, 2013
Decided August 29, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, Circuit Judge

No. 12-3702

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 10 CR 792-1 |
| IVAN C. THOMAS, *Defendant-Appellant*. | Samuel Der-Yeghiayan, *Judge*. |

## O R D E R

Ivan Thomas appeals his 235-month sentence for his role in a large-scale drug conspiracy. He challenges the district court's findings that he distributed more than 10 kilograms of heroin and acted as a leader or organizer of his drug-distribution ring, but because these findings are supported by the record we affirm the sentence.

Between 2005 and 2010, Thomas supplied heroin and crack cocaine to street dealers in the Conservative Vice Lords gang. Operating from his girlfriend's apartment, Thomas cut, weighed, and bagged the drugs, set their sale price, and collected proceeds from the "runners" who delivered the drugs to dealers.

Thomas was arrested in 2010 after supplying crack to an undercover agent and a confidential informant. He pleaded guilty to conspiracy to possess with intent to distribute controlled substances, 21 U.S.C. §§ 841(b)(1)(A), 846, and three counts of possession with intent to distribute controlled substances, *id*. § 841(a)(1). The probation officer who prepared the presentence report calculated a guidelines range of 235 to 293 months, after concluding that Thomas was responsible for about 20 kilograms of heroin and 156 grams of crack, *see* U.S.S.G. §§ 2D1.1(a)(5), (c)(2), and had acted as a leader or organizer of the drug conspiracy, *see id*. § 3B1.1(a). Thomas objected to the quantity of heroin, asserting that he was responsible for a maximum of only three kilograms, and that a coconspirator's testimony to the contrary was unreliable. He further maintained that the four-point adjustment for his role in the offense was unsupported by evidence that he exercised authority over his coconspirators.

Over Thomas's objection, the district court adopted the presentence report's calculations and sentenced him to 235 months on the conspiracy count and 60 months concurrently on the other three counts. In determining that Thomas was responsible for 20 kilograms of heroin, the court noted that his coconspirator, Anthony Grant, had testified credibly about drug quantities both at the sentencing of one of Thomas's codefendants and before the grand jury. The court also credited the sworn plea declaration of another codefendant, Reynaldo Davis, who admitted to personally distributing about a kilogram of heroin on Thomas's behalf during the same period. The court rejected Thomas's argument that the leader/organizer adjustment was unwarranted, noting that Grant's testimony and Davis's plea declaration made clear that both men worked for Thomas, who oversaw drug transactions and collected the proceeds from his runners.

On appeal Thomas first argues that the district court erred by relying on information from Grant and Davis in determining that he was responsible for 10 kilograms or more of heroin. The court, Thomas asserts, should have presumed Davis's statements unreliable because, as a codefendant, Davis might have been attempting to shift blame from himself or to curry favor with the prosecution. Thomas also points out inconsistencies in Grant's statements to law enforcement that he says undermine Grant's credibility, and he maintains that the court should have disregarded the statements of Grant and Davis as uncorroborated hearsay.

Thomas's argument misstates the law of this circuit. Contrary to his assertions, no presumption of unreliability attaches to the statements of codefendants or coconspirators in the sentencing context. *See United States v. Isom*, 635 F.3d 904, 907–08 (7th Cir. 2011) ("The presumption of unreliability for non-testifying coconspirators is premised on the defendant's right at trial to confront his accusers, . . . but the Confrontation Clause does not apply at sentencing."); *see also United States v. Platte*, 577 F.3d 387, 393 (1st Cir. 2009); *United*

*States v. Moncivais*, 492 F.3d 652, 659–60 (6th Cir. 2007). There is no clear error even when the district court credits the "totally uncorroborated" testimony of an "admitted liar." *Isom*, 635 F.3d at 907–08; *see United States v. Johnson*, 489 F.3d 794, 797 (7th Cir. 2007); *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004); *see also United States v. Gant*, 663 F.3d 1023, 1029–30 (8th Cir. 2011); *United States v. Powell*, 650 F.3d 388, 392 (4th Cir. 2011); *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010). And indeed, the statements of a single, potentially biased witness will support a district court's findings of fact. *See United States v. Zehm*, 217 F.3d 506, 514 (7th Cir. 2000); *see also United States v. Ngatia*, 477 F.3d 496, 500 (7th Cir. 2007).

The cases Thomas cites are inapposite. He invokes *Lee v. Illinois*, 476 U.S. 530, 545 (1986), and *United States v. House*, 551 F.3d 694 (7th Cir. 2008), for the proposition that the statements of a codefendant or coconspirator are subject to a presumption of unreliability for purposes of sentencing. But *Lee* involved the admission of a codefendant's hearsay confession at trial, and *House* holds only that sentencing courts may consider hearsay statements that are supported by "sufficient indicia of reliability." *House*, 551 F.3d at 698. Here, the district court explained that it had observed Grant's testimony firsthand and found it credible, noting that Grant testified in detail regarding the amount and frequency of Thomas's drug distribution.

Thomas also characterizes Grant's statements as unreliable because they addressed the volume of his drug sales but not the duration that he sold at this volume. We disagree. Grant testified that he distributed heroin as a "runner" on Thomas's behalf for about 18 months, distributing at least 14 grams of heroin per week. He also stated that during this period he handed off a minimum of 84 grams of heroin per week to another runner, Ervin Hewing. Based on this testimony alone, Grant and Hewing moved more than 7.5 kilograms of heroin over the course of the conspiracy. In addition, Davis pleaded guilty to distributing at least one kilogram of heroin, and according to Grant's testimony he had distributed at least 100 grams per week. Grant also testified that he sometimes dropped off bundles of between 3.6 and 14.4 grams of heroin to each of three other runners, who in turn submitted weekly proceeds to Thomas. Although it is unclear how frequently these other runners received deliveries or for how long they worked for Thomas, the record readily supports the conclusion that Thomas distributed at least 10 kilograms of heroin based on conservative figures and the assumption that the runners occasionally distributed more than Grant's low-end estimates. *See United States v. Fleming*, 676 F.3d 622, 627 (7th Cir. 2012) (endorsing district courts' use of "reasoned speculation and reasonable estimation" of drug quantities) (quotation marks and citation omitted).

Thomas also argues that the district court improperly increased his offense level based on the finding that he was a leader or organizer of the drug conspiracy. As with his drug-

quantity argument, he maintains that the upward adjustment was unwarranted because it was based on the dubious statements of Davis and Grant. He further maintains that he did not exercise the control or authority necessary to support the adjustment because he received drugs from higher ranking members of the conspiracy and because Grant cut him out of some of the drug transactions. At most, Thomas says, he should have received only a three-level increase under U.S.S.G. § 3B1.1(b) for acting as a manager or supervisor.

The record supports the district court's finding that Thomas acted as a leader or organizer. The court was entitled to rely both on Grant's testimony that he recruited workers to the conspiracy on Thomas's behalf and on the statements of an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who was interviewed in connection with the presentence report and who described how Thomas supervised his runners, collected drug proceeds, negotiated with buyers, and set the sale prices for his drugs—all activities that will support a finding that a defendant acted as a leader or organizer. *See United States v. Mendoza*, 576 F.3d 711, 720 (7th Cir. 2009) (noting that defendant played coordinating or organizing role by controlling sale price of cocaine and recruiting another member to the conspiracy); *United States v. Skoczen*, 405 F.3d 537, 550 (7th Cir. 2005) (upholding adjustment where defendant negotiated prices, recruited buyer, and set details of delivery); *see also* U.S.S.G. § 3B1.1 cmt. n.4 (identifying seven factors bearing on the inquiry). Moreover, although Thomas maintains that he was not the "head" of the drug-trafficking organization, his position as a "mere middleman" would not render the adjustment inappropriate; the key inquiry is his "relative responsibility and control over other participants," *Mendoza*, 576 F.3d at 720, and the record demonstrates that Thomas played a central role in organizing and coordinating the runners who reported to him.

Accordingly, we **AFFIRM** the sentence.