# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3193

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ALEJANDRO SANTIAGO,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 245—**Robert W. Gettleman,** *Judge.*

———————

ARGUED MAY 1, 2007—DECIDED AUGUST 2, 2007

———————

Before RIPPLE, MANION and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* The defendant, Alejandro Santiago, was indicted on one count of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and unlawful possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g). Mr. Santiago pleaded guilty and was sentenced to 360 months' imprisonment, based in part on the district court's finding that Mr. Santiago had been involved in other uncharged conduct. Mr. Santiago now appeals that portion of his sentence attributable to the uncharged conduct. For the

reasons set forth in this opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

Mr. Santiago was charged with possession of cocaine base, which he conceded was crack cocaine, with intent to distribute and with unlawful possession of ammunition by a felon. Mr. Santiago pleaded guilty to the offenses. The presentence investigation report ("PSR") calculated Mr. Santiago's total offense level at 32 and his criminal history category at V. This resulted in an advisory guidelines range of 188-235 months' imprisonment. However, the guidelines provide that, when the statutory mandatory minimum sentence is greater than the advisory guidelines range, the statutory mandatory minimum becomes the guidelines sentence. *See* U.S.S.G. § 5G1.1(b). Based on Mr. Santiago's prior convictions and the quantity of cocaine base involved, the statutory mandatory minimum sentence was 240 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). Therefore, as calculated in the PSR, Mr. Santiago's advisory guidelines sentence was 240 months' imprisonment.

The Government requested that the court increase Mr. Santiago's total offense level to 37, which would result in an advisory guidelines range of 324-405 months' imprisonment, and recommended a sentence at the top of that range. The Government submitted that this increase was appropriate because Mr. Santiago's criminal history category did not reflect adequately his prior criminal conduct. The Government first pointed to Mr. Santiago's 1983 conviction in Illinois state court for conspiracy to

commit murder. This conviction was not reflected in Mr. Santiago's criminal history category because his sentence was completed outside of the fifteen-year limit for calculating his criminal history category under the advisory guidelines. The Government further contended that an increase in Mr. Santiago's offense level was warranted because of his participation in the kidnap and murder of a man named Jesus Colon. The Government alleged that, after a co-conspirator in the kidnapping, Francis Bell, was apprehended while attempting to collect the ransom demanded from Colon's family, Mr. Santiago and two other co-conspirators, Victor Lopez and Jose Perez, killed Colon in a particularly gruesome manner and dismembered his body. Mr. Santiago had not been charged with, or convicted of, any offense related to these events.

The Government produced no live witnesses at sentencing. To support its allegations that Mr. Santiago had been involved in the kidnap and murder, the Government presented: video confessions given by Lopez and Perez to the Illinois state prosecutor implicating Mr. Santiago in Colon's murder; transcripts of sworn statements by Simitrio Sanchez and Pablo Morales, two other co-conspirators in the kidnap of Colon, that corroborated the confessions of Lopez and Perez; transcripts of sworn statements by Agents Henry Harris and William Warren of the Drug Enforcement Agency, both of whom had investigated the kidnap and murder of Colon; and phone records between the co-conspirators on the day Bell was arrested. Additionally, the Government introduced a letter written by Mr. Santiago to his brother while Mr. Santiago was being held at the Metropolitan Correctional Center following his arrest on the present charges. The letter discussed his concern upon learning the news that Lopez and Perez had been arrested in connection with Colon's

murder. In the letter, Mr. Santiago expressed that he likely would be implicated in the murder by Lopez and Perez, but that he was forming a plan to place the blame on himself, Lopez and Perez in order to save his brother from liability.

Mr. Santiago raised numerous objections at sentencing, including his contention that any reliance on the out of court statements by Lopez, Perez and the others would violate his Sixth Amendment rights under the Confrontation Clause. He further submitted that, because the uncharged conduct would result in a significant increase in his sentence, the court was required to find any facts related to the uncharged conduct beyond a reasonable doubt.

The district court overruled Mr. Santiago's objections. It then found that Mr. Santiago had participated in the murder of Colon. The court noted that the confessions of Lopez and Perez alone likely would not support such a finding by a preponderance of the evidence. However, based on Mr. Santiago's letter to his brother, the court found beyond a reasonable doubt that Mr. Santiago had participated in the murder. Rather than apply these facts to increase Mr. Santiago's offense level under the advisory guidelines,[1] as the Government had requested, the court

---

[1] The district court had concluded that Mr. Santiago's total offense level was 29 and his criminal history category was V. This resulted in an advisory guidelines range of 140-175 months' imprisonment. As noted previously, the guidelines provide that, when the statutory mandatory minimum sentence exceeds the advisory guidelines range, the statutory mandatory minimum
(continued...)

accounted for these facts as it evaluated Mr. Santiago's sentence in light of the statutory sentencing factors in 18 U.S.C. § 3553(a).[2]

---

[1] (...continued)
becomes the guidelines sentence. *See* U.S.S.G. § 5G1.1(b). Therefore, the court concluded, the advisory guidelines sentence was the statutory mandatory minimum sentence of 240 months' imprisonment.

[2] 18 U.S.C. § 3553(a) provides:

(a) Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(continued...)

---

[2]   (...continued)

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

> > (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

> > (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

> (5) any pertinent policy statement—

> > (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments

(continued...)

The court found the uncharged conduct relevant to evaluating Mr. Santiago's history and characteristics, the need to promote respect for the law and to provide an adequate deterrent, and to protect the public from Mr. Santiago. In light of these considerations, the court concluded that a sentence of 360 months' imprisonment was sufficient but not greater than necessary to fulfill the purposes of § 3553(a).

## II

## DISCUSSION

Mr. Santiago now appeals his sentence. He first raises a number of constitutional challenges to the procedure employed by the district court in determining his sentence. Mr. Santiago contends that under the Sixth Amendment, as interpreted in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005), any fact that increased his sentence had to be found beyond a reasonable doubt by a jury. Next, Mr. Santiago asserts that, under the Due Process Clause of the Fifth Amendment, the court was

---

[2] (...continued)

> issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

required to find beyond a reasonable doubt that he had participated in the murder of Colon because these findings had resulted in a considerable increase in his sentence. Lastly, Mr. Santiago submits that the district court violated his Sixth Amendment right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004), when it considered statements by Lopez and Perez without affording Mr. Santiago the opportunity to cross-examine them. We previously have considered and rejected each of these contentions. *See United States v. White*, 472 F.3d 458, 464 (7th Cir. 2006) (holding that *Booker* does not require facts found at sentencing to be found by a jury beyond a reasonable doubt as long as the factual findings do not increase the defendant's sentence beyond the statutory maximum for the offense of conviction);[3] *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir. 2006) (holding that facts leading to large increases in a sentence only need be found by a preponderance of the evidence);[4] *United States v. Miller*, 450 F.3d 270, 273 (7th Cir. 2006) (holding that neither *Crawford* nor the combination of *Crawford* and *Booker* extend the defendant's rights under the Confrontation Clause to sentencing proceedings).

---

[3] Mr. Santiago pleaded guilty to possession of more than 50 grams of cocaine base in the form of crack. The statutory maximum sentence for this offense is life imprisonment. *See* 21 U.S.C. § 844(b)(1)(A).

[4] The district court found that the Government had established beyond a reasonable doubt that Mr. Santiago had participated in the murder of Colon. Thus, even if we had not rejected previously Mr. Santiago's contention that facts leading to a significant increase in a defendant's sentence must meet a higher evidentiary burden, it would make no difference in this case. *See United States v. Boos*, 329 F.3d 907, 910 (7th Cir. 2003).

Mr. Santiago next asserts that the evidence was insufficient to support the district court's finding that he had participated in the murder of Colon. We review the district court's factual determinations with respect to sentencing for clear error. *United States v. Cross*, 430 F.3d 406, 410 (7th Cir. 2005). Further, due process requires that the district court's findings be based on reliable evidence. *Id.* Evidence will satisfy this requirement if it "bear[s] sufficient indicia of reliability to support [its] probable accuracy." *Id.* (citing *United States v. Lanterman*, 76 F.3d 158, 161 (7th Cir. 1996)) (alterations in original).

Mr. Santiago asserts that statements by Lopez and Perez were unreliable. He points out that the district court noted that it believed Lopez and Perez had been coached in their statements and probably had rehearsed the statements before they were filmed. "[A] 'very strong presumption of unreliability' attaches to statements that are: (1) given with government involvement; (2) describe past events; and (3) have not been subjected to adversarial testing." *United States v. Jones*, 371 F.3d 363, 369 (7th Cir. 2004) (quoting *United States v. Ochoa*, 229 F.3d 631, 637 (7th Cir. 2000)). The district court was mindful of these principles and noted that it "would be reluctant to conclude" by a preponderance of the evidence that Mr. Santiago had participated in the kidnap and murder of Colon based solely on these statements. R.81 at 50.

However, the district court then concluded that Mr. Santiago's letter to his brother was "tantamount to a confession" by Mr. Santiago. *Id.* at 51. The court held that the letter was sufficient by itself to establish beyond a reasonable doubt Mr. Santiago's involvement in the murder of Colon. The court noted that Mr. Santiago discussed in the letter his plan to place the blame on

himself, Lopez and Perez and that he anticipated that they all would be executed for the crime. The court found that these statements evinced Mr. Santiago's knowledge of, and involvement in, the particularly gruesome murder of Colon. Mr. Santiago does not assert that the letter itself is unreliable. Because the letter was reliable and sufficient on its own to establish his involvement in the crime, the district court's findings of fact were not clearly erroneous.

Nonetheless, the sentence imposed by the district court must be reasonable in light of the factors set forth in § 3553(a). *Booker*, 543 U.S. at 261. In determining Mr. Santiago's sentence, the district court was required first to calculate his sentence under the advisory guidelines. *United States v. Stitman*, 472 F.3d 983, 989 (7th Cir. 2007). The district court did so and concluded that the advisory guidelines called for the statutory mandatory minimum sentence of 240 months' imprisonment. Mr. Santiago does not allege any error in this respect. The court was then required to give Mr. Santiago the opportunity to invite its attention to any factor under § 3553(a) that would warrant a departure from the guidelines, *see id.*, which the court did. The final step in the sentencing procedure required the court to consider the § 3553(a) factors and articulate the factors that determined the sentence imposed. *See id.* at 990. After considering the factors set forth in § 3553(a), the district court concluded that a sentence of 360 months' imprisonment was sufficient but not greater than necessary to fulfill the purposes of § 3553(a). The district court concluded that Mr. Santiago's history of violent and antisocial criminal conduct made a sentence above the statutory mandatory minimum necessary to promote respect for the law, to provide deterrence and to protect the public from Mr. Santiago.

Each of the reasons articulated by the district court for justifying an above-guidelines sentence are grounded in § 3553(a). The district court's findings revealed Mr. Santiago's involvement in a series of violent crimes spanning more than twenty years. Given Mr. Santiago's violent and persistent criminal conduct over such a long period of time, we conclude that the district court's decision to impose a sentence greater than the advisory guidelines sentence was not unreasonable.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*