In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3857

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

EKABAL PAUL BUSARA,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03 CR 52—**William C. Griesbach**, *Judge*.

ARGUED OCTOBER 28, 2008—DECIDED DECEMBER 30, 2008

Before BAUER, RIPPLE and EVANS, *Circuit Judges*.

RIPPLE, *Circuit Judge*.  Ekabal "Paul" Busara pleaded guilty in the United States District Court for the Eastern District of Wisconsin to kidnaping and conspiracy to commit kidnaping, in violation of 18 U.S.C. §§ 1201(a) and 1201(c). The district court sentenced Mr. Busara to life in prison. In an earlier appeal, we vacated that sentence as unreasonable, *United States v. Singh*, 483 F.3d 489 (7th Cir. 2007), and remanded the case for resentencing. The district court resentenced Mr. Busara to 480 months' impris-

onment. Mr. Busara then filed this appeal challenging his new sentence as unreasonable. Because we conclude that the new sentence is reasonable, we affirm.

# I

## BACKGROUND

The chain of events that has brought Ekabal Busara before us for a second time began in February 2003, when Mr. Busara's friend, Malkit Singh, asked Mr. Busara to accompany him on a trip from their home state of New Jersey to Francis Creek, Wisconsin. The purpose of the trip was to confront a man named Waheed Akhtar about a business deal that had gone bad. Akhtar owned Fun 'N Fast, a gas station and convenience store in Francis Creek. Before moving to Wisconsin, Akhtar had lived in Atlantic City, New Jersey, where he had worked with Singh at two local gas stations.

In late 2002, Akhtar had asked Singh to come to Wisconsin and manage the Fun 'N Fast while Akhtar traveled overseas. Singh managed the business from November 2002 until Akhtar's return in January 2003. During, or shortly after, this period, Akhtar offered to sell the business to Singh. Singh paid Akhtar approximately $200,000, but obtained no receipt. There was no documentation of any agreement to sell the store. Singh became anxious about the deal when Akhtar refused to move forward with the sale or return the money.

In late February 2003, Singh decided to travel to Wisconsin to force the issue with Akhtar. Mr. Busara agreed to

go with him. On the way, the pair stopped at a Home Depot and purchased a tarp, a crowbar, gloves and a rope. Upon their arrival in Francis Creek, they immediately went to Akhtar's station, but he was not there. They returned later that day and discussed the purchase of the station with Akhtar. When no agreement was reached, Singh asked if he and Mr. Busara could sleep at Akhtar's house that night. Akhtar gave them the keys to his apartment, and Singh and Mr. Busara went there to rest. When Akhtar returned to the apartment later that evening, he and Singh once again discussed the sale, but still were unable to reach an agreement.

There is some dispute between Singh and Mr. Busara as to what happened next. The district court found that Akhtar then went to bed. At some point thereafter, continued the district court, Mr. Busara became agitated, went into the bedroom and struck Akhtar in the head with a dumbbell. Singh and Mr. Busara then bound Akhtar's hands and feet and turned him over onto his back. Mr. Busara struck him again with the dumbbell. They then wrapped Akhtar in a blanket and in the tarp that they had purchased on the drive from New Jersey. They carried Akhtar outside and placed him in the back of their Nissan Pathfinder. Akhtar was still breathing when they put him in the car. Singh and Mr. Busara then returned to the apartment, where they removed the bloody sheets from the bed and flipped the mattress to hide a blood stain.

Leaving Akhtar in the Pathfinder, the men drove Akhtar's car some distance away and discarded the

bloody sheets in a trash bin. They then returned to the apartment, where Mr. Busara retrieved the Pathfinder. The men then drove both cars to the Fun 'N Fast and told Mukaram Iqbal, Akhtar's nephew, that they had come to help him close the store. Singh lured Iqbal into a cooler, where Mr. Busara struck him repeatedly with glass bottles while Singh punched and choked him. The men tied up Iqbal, cleaned the store and placed Iqbal in the back seat of the Pathfinder. The defendants then drove the Pathfinder, which now held both Akhtar and Iqbal, to New Jersey. They rented a hotel room, where Mr. Busara stayed the night with Iqbal while Singh stayed with his girlfriend. In the morning, Singh returned, and he and Mr. Busara moved the Pathfinder, which still contained Akhtar's body, to a gas station parking lot. Singh tried to take Iqbal for medical attention, but was unsuccessful because Iqbal did not have an American insurance card. Singh also purchased some clothes and food for Iqbal. Singh rented a new room in another hotel and left Iqbal there, alone and untied, threatening to harm Iqbal's family if he tried to escape. As soon as Singh left, however, Iqbal ran across the street and called the police.

In the meantime, a clerk at the Fun 'N Fast had reported Akhtar missing. Based on information from Iqbal and the missing-persons report, the police began investigating and searching for Singh and Mr. Busara. When the men realized that Iqbal had escaped and that the police were looking for them, they retrieved the Pathfinder and drove to a nearby storage facility, where they disposed of Akhtar's body.

Singh then fled to New York City. Mr. Busara remained in Atlantic City and surrendered to the police on March 5, 2003. Singh was arrested in New York six days later. Singh and Mr. Busara both confessed involvement in the crimes, but they told conflicting stories about what happened. Mr. Busara claimed that Singh was the one who hit Akhtar with the dumbbell, while Singh claimed that Mr. Busara struck the fatal blow. Mr. Busara led the authorities to Akhtar's body.

Singh and Mr. Busara were each charged with two counts of kidnaping and one count of conspiracy. Singh's case went to trial, and he was convicted on all counts. The court sentenced Singh to 420 months in prison. Mr. Busara, on the other hand, pleaded guilty to one count of kidnaping and one count of conspiracy. The court sentenced him to life in prison. The court concluded that a longer sentence was justified for Mr. Busara based on its finding that he was the one who delivered the fatal blow and its belief that Mr. Busara had not been entirely candid about his role in the crimes. Mr. Busara appealed his conviction and sentence to this court. We affirmed his conviction but vacated his sentence, holding that the district court erred in applying a two-level obstruction enhancement because Singh and Mr. Busara had buried Akhtar's body. *See United States v. Singh*, 483 F.3d 489 (7th Cir. 2007). Accordingly, we remanded for resentencing.

The district court resentenced Mr. Busara on November 9, 2007. On resentencing, the court calculated Mr. Busara's sentencing range under the United States Sentencing Guidelines at 360 months to life, and decided to impose

a sentence of 480 months, which it described as "five years more than Singh." R.387 at 38. In explaining the sentence, the court focused on its finding that Mr. Busara was the one who delivered the fatal blow and its conclusion that Mr. Busara had not been fully candid as to his role in the crime.

Mr. Busara now appeals his new sentence, which he submits is unreasonable.

## II

## DISCUSSION

Mr. Busara challenges the reasonableness of his sentence on two grounds. First, he contends that the record does not support the district court's factual finding that he struck the blow that killed Akhtar. Second, he submits that his sentence is unreasonable in light of the sentencing factors set forth in 18 U.S.C. § 3553(a).

### A.  The District Court's Finding of Fact

Mr. Busara submits that the district court erred in finding that he, rather than Singh, struck the fatal blow. He contends that the only support for this finding comes from Singh's self-serving statement to police that Mr. Busara was the one who hit Akhtar. He submits that Singh's statement is "presumptively unreliable" because it "not only attempts to shift blame to reduce Mr. Singh's own criminal liability but also (1) was given with government involvement; (2) describes past events; and (3) has not been

subjected to adversarial testing." Appellant's Br. 21 (citing *United States v. Jones*, 371 F.3d 363, 369 (7th Cir. 2004)). Mr. Busara contends that, because Mr. Singh's statement was unreliable, any factual determinations the court made based on it are invalid—including the determination that Mr. Busara struck the fatal blow. Mr. Busara submits that the sentence is unreasonable because the court's sentencing decision was based primarily on this determination.

In imposing a sentence, a district court may rely upon facts that have been proven by a preponderance of the evidence. *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). We review a district court's findings of fact for clear error. *United States v. Choiniere*, 517 F.3d 967, 973 (7th Cir. 2008).

Mr. Busara is correct that we have looked with skepticism on the use of untested self-serving statements by co-defendants. *See United States v. Santiago,* 495 F.3d 820, 825 (7th Cir. 2007); *United States v. Jones*, 371 F.3d 363, 369 (7th Cir. 2004). The district court acknowledged that Singh's statement was presumptively unreliable because it was self-serving and had not been subjected to cross-examination. The court also noted, however, that Mr. Busara's statement was unreliable for the same reasons. The court decided to credit Singh's statement over Mr. Busara's because it determined that Singh's statement "fit the facts and evidence" while Mr. Busara's statement did not. R.387 at 15. More precisely, the district court determined that Singh's statement bore "sufficient indicia of reliability to support [its] probable accuracy," which overrode the presumption of unreliability. *Santiago*, 495 F.3d at 824. The

record establishes that this determination was reason-able. As the court noted, Singh's story was that Mr. Busara struck Akhtar while he was lying in bed asleep. The physical evidence supports this description. Akhtar was clothed only in his underwear when his body was recovered, and Akhtar's mattress and sheets were covered with his blood. Mr. Busara, on the other hand, claimed that Singh attacked Akhtar while Akhtar was eating dinner and discussing the business deal with Singh. This version of events is much harder to reconcile with the physical evidence.

The court also made other findings that support Singh's account. It is undisputed that Mr. Busara was the one who initially struck Iqbal when he and Singh abducted him. Moreover, it was Mr. Busara who stayed with Iqbal in the hotel to prevent his escape while Singh left with his girlfriend. The court found that these facts supported the notion that Mr. Busara's role was to serve as "the muscle" of the group, which in turn made it more likely that he was the one who attacked Akhtar. This conclusion was a reasonable inference.

Finally, the court found that Mr. Busara had made dubious and inconsistent statements in "an attempt to distance himself, to minimize his involvement, even after he supposedly has come clean." R.364 at 83. Mr. Busara contends that this is an invalid reason for the court to credit Singh's version of events, because "the issue here is not credibility, it is evidence." Reply Br. 6. We cannot accept this argument. Either Singh's statement about who struck Akhtar is true, and Mr. Busara's statement is false; or, conversely, Singh's statement is false, and Mr.

Busara's statement is true. There are no other possibilities. Hence, in this case anything that makes it less likely that Mr. Busara's statement is true necessarily makes it more likely that Singh's statement is true. Mr. Busara's lack of credibility therefore makes it more likely that Singh's account of events is true, and the district court did not err in considering it.

## B. The Reasonableness of the Sentence

Mr. Busara also submits that his sentence is unreasonable in light of 18 U.S.C. § 3553(a), which directs courts to impose sentences that are "no longer than necessary" to achieve the sentencing objectives enumerated in the statute.[1] Mr. Busara contends that the district court's "clearly erroneous factual findings"—particularly

---

[1] The Section 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

its finding that Mr. Busara was the one who struck Akhtar—led the court to impose a sentence that was longer than necessary in light of the nature and circumstances of the offense, the seriousness of the offense, and "his personal background and characteristics." Appellant's Br. 29; *see also id*. at 29-30 (describing Mr. Busara's lack of criminal history, his low risk of recidivism, and other potential mitigating factors). Mr. Busara also challenges the court's decision to "place[] primary weight on the severity of the offense" to the "near-exclusion" of the other factors. Appellant's Br. 28. Finally, he argues that it was unreasonable for the court to give him a longer sentence than Singh because his culpability was less than, or at least no greater than, Singh's.

Sentences that fall within the Guideline range are presumptively reasonable. *Shannon*, 518 F.3d at 496. The district court imposed a sentence within the Guideline range; accordingly, we shall reverse only if Mr. Busara can prove that the district court's sentencing decision amounted to an abuse of discretion. *Id*. Mr. Busara has not met this burden. The record establishes that the district court carefully and explicitly weighed the facts in this case in light of the statutory sentencing factors. It considered a number of factors that potentially could counsel a lower sentence for Mr. Busara, including the facts that he did not intend to kill Akhtar, had no prior criminal record and had been a model prisoner in the time he was incarcerated. Indeed, the court relied on these facts in determining that Mr. Busara deserved a sentence that was lower than the Guideline maximum of life in prison. Ultimately, however, the court decided that the

offense and Mr. Busara's role in it were sufficiently serious to make a 40-year sentence appropriate in light of the Section 3553(a) factors.

Ever since the Supreme Court announced, in *United States v. Booker*, 543 U.S. 220 (2005), that the Sentencing Guidelines are merely advisory to the district courts, our review of whether a particular sentence is reasonable has focused primarily on whether the court adequately considered the Section 3553(a) factors and articulated reasons for the sentence that are grounded in those factors. *See, e.g., Shannon*, 518 F.3d at 496 (evaluating whether the district court provided "an adequate statement of reasons, consistent with § 3553(a), for thinking the sentence it selects is appropriate" (citing *United States v. Harris*, 490 F.3d 589, 597 (7th Cir. 2007))). Here, the court clearly did so. Although Mr. Busara argues that the court placed inordinate weight on the fact that he struck the fatal blow, "to the near-exclusion of the other[] [factors]," Appellant's Br. 28, it is clear from the record that the court did consider other factors and in fact reduced Mr. Busara's sentence because of some of them. In any event, it is perfectly acceptable for courts to assign varying weights to the factors as they deem appropriate in the context of each case. As we have noted before: "The statute does not weight the factors. That is left to the sentencing judge, within the bounds of reason, which are wide." *United States v. Johnson*, 471 F.3d 764, 766 (7th Cir. 2006). The district court's weighing of the Section 3553(a) factors in this case did not exceed those bounds.

Mr. Busara's final argument is that his sentence is presumptively unreasonable because he received a longer

sentence than Singh, despite being less culpable. As we noted earlier, however, the district court reasonably found that Mr. Busara was the one who actually caused Akhtar's death. In light of this fact and the court's observation that Mr. Busara continued to lie about his role in the crime, we do not believe that the district court abused its discretion in deciding that Mr. Busara deserved a longer sentence than Singh.

## Conclusion

For the foregoing reasons, Mr. Busara's sentence is affirmed.

AFFIRMED