In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1085

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHAZZIE T. ISOM,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 09-20012-001—**Michael P. McCuskey,** *Chief Judge.*

ARGUED DECEMBER 14, 2010—DECIDED MARCH 14, 2011

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* After a jury trial, Chazzie Isom was convicted of three counts of distributing cocaine base. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A). The sales totaled about 70 grams, but the district court attributed to him as relevant conduct a much larger amount—roughly 600 grams—and sentenced him to 262 months' imprisonment. On appeal Isom primarily challenges this relevant conduct finding, arguing that he should

not be accountable for drug transactions involving two coconspirators. Because the district court properly calculated the drug quantity using reliable information, we affirm.

## I.

At trial, an undercover special agent with the Illinois State Police described three controlled buys of crack cocaine from Isom; each purchase was the basis for a separate count. Regarding the first purchase, the agent testified that he called Isom in December 2008 and arranged to buy two "eight-balls"[1] (about 3.5 grams of crack cocaine each) in a parking lot. The agent went to the lot, parked next to a red van, and climbed in. He bought about 6 grams of crack from a woman in the van, Nancy Rose. Rose too testified at trial, corroborated the agent's account, and stated that she was at the parking lot at Isom's instruction. She also stated that she used crack twice a day, and that Isom gave her drugs in exchange for letting him sell drugs from her home and occasionally delivering for him.

The second purchase occurred five days later. The agent recounted that he called Isom and arranged to buy more crack in another parking lot; Isom arrived in the same red van, entered the agent's car, and handed

---

[1] "Eight-ball" is a street term for one-eighth of an ounce. *See United States v. Plummer*, 581 F.3d 484, 486 (7th Cir. 2009), *cert. denied,* 130 S. Ct. 1105 (2010).

the agent a Doritos bag containing 5.5 grams of crack cocaine.

The third purchase occurred in January 2009. According to the agent, after a series of phone calls, Isom agreed to sell him an ounce of crack cocaine. Isom met the agent at a Wendy's parking lot, entered the agent's car, took the agent's money, and then told the agent that he could find the drugs in a trash can in the Wendy's restroom. There, the agent found 61.3 grams of crack cocaine, and Isom was arrested later that day.

In the presentence report, the probation officer held Isom accountable not only for the 72.8 grams (6 + 5.5 + 61.3) he sold to the agent, but also for 537.28 grams he allegedly distributed to coconspirators Karen Coffey and Nancy Rose. Isom's dealings with Coffey constituted the lion's share of this quantity. The probation officer estimated Isom's distribution to Coffey at 467.28 grams, based on statements she gave to law enforcement that from August 2007 to spring 2008 she delivered drugs for Isom 5 days a week, up to 20 times a day, and that nearly every delivery involved crack cocaine worth $50. Based on this statement, the probation officer calculated that on 132 occasions Isom distributed 3.54 grams (132 x 3.54 = 467.28). The probation officer attributed to Isom an additional 70 grams based on statements Rose made to law enforcement that—in addition to the amounts she distributed for Isom—he typically gave her $50 to $75 worth of crack cocaine per day over 2½ months. Based on these sums, the probation officer estimated that Isom gave Rose one gram a day for 70 days—totaling 70 grams.

Isom was also held accountable for an additional 9 grams stemming from two uncharged, controlled sales: one that Isom made to the undercover agent in early December for 3.4 grams of crack; and one that Coffey made to the agent for 5.6 grams while the agent was trying to arrange to buy drugs from Isom. Isom did not (nor does he now) contest that these 9 grams were properly included as relevant conduct.

Isom curtly disagreed with the presentence report's inclusion of the 537.28 grams distributed to Rose and Coffey as relevant conduct; he asserted without elaboration that this relevant conduct was based on unreliable hearsay. But the probation officer did not address this disagreement because, the officer wrote, "it did not rise to the level of a formal objection." He noted, though, that Isom's concession of being responsible for 80.2[2] rather than 72.8 grams reflected Isom's acknowledgment that the report contains "some accurate information."

At the sentencing hearing, the agent who bought drugs from Isom testified in support of the probation officer's drug-quantity calculation. The agent verified that Coffey was an associate of Isom's: the agent had called Isom's phone and spoken to Isom's girlfriend, who arranged for the agent to buy drugs from Coffey. The agent

---

[2]  The presentence report's reference to 80.2 grams is a mystery, and the parties offer no explanation for its source. The crimes of conviction accounted for 72.8 grams, and Isom contends that he was properly held accountable for an additional 9 grams (3.4 + 5.6).

added that Coffey later acknowledged delivering drugs for Isom and identified both Rose and Isom's girlfriend as persons she knew who were also selling drugs on Isom's behalf. The agent likewise verified that Nancy Rose told officers who interviewed her that Isom was selling drugs from her home and that he gave her crack. The agent also testified that Rose identified Coffey as a regular customer of Isom's.

The district court adopted the probation officer's recommendation, and included 619.08 grams (72.8 + 9 + 537.28) as relevant conduct. The court found the agent credible and noted that the drug-quantity calculation was conservative given the broad scope of the uncharged conspiracy. The court calculated Isom's base offense level at 34, *see* U.S.S.G. § 2D1.1(c)(3), added 3 points for a managerial role in the offense, *see id.* § 3B1.1(b), and assigned a criminal history category of III, to arrive at a guidelines range of 262 to 327 months. The court sentenced Isom to 262 months' imprisonment, remarking that the sentence was reasonable and necessary to punish Isom for his crime and deter him and his coconspirators from engaging in future criminal activity.

## II.

Now represented on appeal by different counsel, Isom makes two arguments for resentencing. First, he asserts that the district court overstated his relevant conduct and, as a result, imposed too severe of a sentence. He also argues that his counsel was ineffective at sentencing for failing to raise the sentencing disparity

between crack and powder under *Kimbrough v. United States,* 552 U.S. 85 (2007).

Isom argues that the district court erroneously increased his base offense level when it earmarked 537.28 grams of drugs as relevant conduct. The relevant conduct beyond the 80 grams that he conceded he sold increased his sentencing exposure from a mandatory minimum of 240 months to an advisory guideline range of 262 to 327 months.[3] *See* 21 U.S.C. § 841(b)(1)(A); U.S.S.G. § 2D1.1(c)(3).

Isom contends that the district court should have *presumed* that Rose's and Coffey's statements—which led to his being held accountable for 537.28 grams—were unreliable hearsay because the two were non-testifying coconspirators. He cites *United States v. Jones*, 371 F.3d 363, 369 (7th Cir. 2004), and *United States v. Santiago*, 495 F.3d 820, 825 (7th Cir. 2007), to argue that a sentencing court must presume a coconspirator's statement unreliable if that statement: (1) was given with government

---

[3] Isom overstates the increase in the guidelines range. He asserts that the inclusion of the relevant conduct increased his range from 168-210 months to 262-327 months. But Isom's calculations overlook the 20-year mandatory minimum that applies because of his prior conviction for a felony drug offense. *See* 21 U.S.C. § 841(b)(1)(A). If a statutory minimum sentence is greater than the maximum of the applicable guideline range, then that statutory minimum sentence becomes the bottom of the guideline range. *See* U.S.S.G. § 5G1.1(b); *United States v. Gibbs*, 578 F.3d 694, 695 (7th Cir. 2009).

involvement; (2) described past events; and (3) has not been subjected to adversarial testing. He notes that, for her involvement, Rose received 48 months' probation in state court.

But Isom misapprehends this court's interpretation of the presumption. *Jones* recognized this presumption when admitting a coconspirator's statement *at trial*, not sentencing. 371 F.3d at 369; *see United States v. House,* 551 F.3d 694, 699 n.2 (7th Cir. 2008). A district court in determining a sentence is not bound by the same evidentiary standards that apply in a criminal trial. *See* FED. R. EVID. 1101(d)(3); *United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007). The presumption of unreliability for non-testifying coconspirators is premised on the defendant's right at trial to confront his accusers, *see, e.g., Lilly v. Virginia*, 527 U.S. 116, 137 (1999) (plurality opinion); *United States v. Ochoa*, 229 F.3d 631, 637 (7th Cir. 2000), but the Confrontation Clause does not apply at sentencing, *Williams v. New York*, 337 U.S. 241, 250-51 (1949); *United States v. Betts*, 576 F.3d 738, 744 (7th Cir.), *cert. denied*, 130 S. Ct. 1027 (2009); *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005). With regard to sentencing, this court has declined to attach any presumption of unreliability to coconspirators' statements. *See House,* 551 F.3d at 699 n.2; *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007); *Johnson,* 489 F.3d at 797; *see also United States v. Moncivais*, 492 F.3d 652, 659-60 (6th Cir. 2007). As this court has repeatedly observed, a sentencing judge is free to credit testimony that is "totally uncorroborated," "comes from an admitted liar, convicted felon, . . . large scale drug-dealing, paid government informant," or "self-interested

co-conspirator[].” *Johnson,* 489 F.3d at 797 (internal quotation and citation omitted).

Isom’s reliance on *Santiago* is similarly misplaced. In that case, which involved videotaped confessions of two men that were used to substantiate the defendant’s role in a kidnapping and murder, this court bypassed any discussion of the presumption. The opinion quoted the elements of the presumption and noted the district court’s awareness of them, yet affirmed the defendant’s sentence without deciding the reliability of the recorded confessions. *Santiago,* 495 F.3d at 824-25; *see United States v. Busara,* 551 F.3d 669, 672-73 (7th Cir. 2008).

As the government points out, Isom invokes this presumption to avoid the consequences of trial counsel’s insufficient objection to the presentence report. The probation officer determined that trial counsel had not raised a formal objection through a written submission stating only that he objected to “all relevant conduct, as relevant conduct is based on unreliable hearsay.” Nor did Isom raise much of an objection at the sentencing hearing, merely alluding to the fact that one of the coconspirators was not charged with a federal crime. Isom had to produce more than a bare denial to adequately object, which he did not. *See United States v. Turner,* 604 F.3d 381, 385 (7th Cir. 2010). Absent an objection, the district court was entitled to rely on the presentence report—even if it rested on hearsay. *See* FED. R. CRIM. P. 32(i)(3); *United States v. Aviles-Solarzano,* 623 F.3d 470, 475 (7th Cir. 2010); *United States v. Charlesworth,* 217 F.3d 1155, 1160 (9th Cir. 2000).

In any event, the key at both trial and sentencing to admitting statements from non-testifying coconspirators is reliability. At trial, the government can over-come the presumption against self-serving statements from non-testifying coconspirators by showing that the statements are reliable, or have "particularized guarantees of trustworthiness." *Lee v. Illinois*, 476 U.S. 530, 543 (1986); *see Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). At sentencing, courts may rely on presentence reports containing even double-hearsay, i.e., statements by coconspirators to investigators, so long as those statements are reliable. *See Artley*, 489 F.3d at 821; *United States v. Westmoreland*, 240 F.3d 618, 629-30 (7th Cir. 2001); *see also United States v. Jones*, 195 F.3d 379, 382 (8th Cir. 1999); *United States v. Randall,* 171 F.3d 195, 211-12 (4th Cir. 1999); *United States v. Query*, 928 F.2d 383, 384-85 (11th Cir. 1991).

Here, the government established that both Rose's and Coffey's accounts as recounted in the presentence report were reliable. Reliability can be established by internal consistency, corroborating evidence, and providing missing facts and details. *See United States v. Mays*, 593 F.3d 603, 608 (7th Cir.), *cert. denied,* 130 S. Ct. 3340 (2010); *United States v. Hankton*, 432 F.3d 779, 791 (7th Cir. 2005); *United States v. Thomas*, 280 F.3d 1149, 1154 (7th Cir. 2002); *United States v. Galbraith*, 200 F.3d 1006, 1013 (7th Cir. 2000). Rose's testimony at trial was consistent with what she told the officers as recounted in the presentence report. Moreover, the agent testified that when Rose was interviewed, Rose stated that Coffey was "a regular customer of Isom's who would come to

her residence frequently to purchase crack cocaine," and that "after [Rose] kicked Isom out of her residence, Isom began selling crack cocaine from Coffey's apartment." Regarding Coffey, the agent testified that she was an associate of Isom's. When the agent could not reach Isom for a crack-cocaine delivery, Coffey subbed in and sold the agent cocaine. If Isom wanted to impeach this testimony, Isom could have done so, but he elected not to. *See United States v. Schaefer*, 291 F.3d 932, 943 (7th Cir. 2002). The court's reliance on those accounts, corroborated and reinforced by the agent's testimony, was not clearly erroneous.

We turn now to Isom's argument that his trial counsel was ineffective for failing to raise the *Kimbrough* issue. In his brief to this court, Isom's appellate lawyer argued that trial counsel had no strategic reason for remaining silent on the *Kimbrough* issue, and thus was deficient in not raising the claim. We likewise are hard-pressed to discern any strategic justification for trial counsel's silence. When the district judge asked counsel whether he had anything further on the drug-quantity issue, counsel stressed that in his 30 years' experience he learned it was best to keep his "mouth shut." We will not justify as "strategic" a decision to stay silent if we cannot discern any way in which silence would have improved the client's position. *See Girts v. Yanai*, 501 F.3d 743, 757-58 (6th Cir. 2007); *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007).

Before oral argument, however, Isom's appellate counsel notified this court that he was withdrawing the

ineffective-assistance argument "with no waiver to the argument being asserted in a subsequent proceeding under 28 U.S.C. § 2255." Counsel confirmed that statement at oral argument. This was a wise move since ineffective-assistance claims typically require a more developed record than exists on direct appeal. *See Massaro v. United States,* 538 U.S. 500, 505 (2003); *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir. 2002). And on the off chance that Isom might have a valid postconviction claim that trial counsel was ineffective for failing to raise a *Kimbrough* argument, it would be premature for us to discuss that question. At oral argument we also asked appellate counsel if he wished us to address the forfeited *Kimbrough* claim as a matter of plain error in lieu of his ineffective-assistance claim, which we have power to do, *see United States v. Olano,* 507 U.S. 725, 733-34 (1993); *Silber v. United States,* 370 U.S. 717, 717-18 (1962). But counsel declined our invitation.

## Conclusion

Because the district court's relevant-conduct determination rested on reliable evidence, we AFFIRM.