In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1831

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROLLIE MITCHELL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 08 CR 00016—**Sarah Evans Barker**, *Judge.*

ARGUED NOVEMBER 4, 2010—DECIDED MARCH 24, 2011

Before BAUER, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Rollie Mitchell was convicted for distributing cocaine base and sentenced to life imprisonment, in large part due to his participation in the murder of a confidential informant in his case. He appeals his sentence. We find that the district court properly calculated the guidelines range and did not improperly consider Mitchell's exercise of his Sixth Amendment right to counsel. We therefore affirm.

I.

In June 2006, Mitchell sold approximately 144 grams of cocaine base to Tony Hurd, a police informant in Richmond, Indiana. Hurd also purchased cocaine base from two of Mitchell's associates, Billy Hicks and Tyree Smith. Mitchell, Hicks, and Smith were all charged in state court with controlled substance offenses. Following the state charges, the county clerk's office erroneously—and tragically—made public Hurd's identity. In July, Hurd began receiving threats such as "snitch, you're going to die." In August, Hurd was murdered—shot eight times while he sat in an automobile in a gas station parking lot near Dayton, Ohio.

Mitchell was then indicted on federal drug offenses. Following a jury trial, he was convicted of knowingly distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). At the sentencing hearing, the prosecution presented evidence that Mitchell participated in planning and funding Hurd's murder, although there was no suggestion that he was the actual triggerman. Special Agent Noel Gaertner of the Drug Enforcement Agency testified about an interview he had with informal jailhouse lawyer—and sometime informant—Edward Bradley. According to Gaertner, Bradley stated that Mitchell had related to him the plan for Hurd's murder: Billy Hicks had recruited a woman to bring Hurd to a gas station, where he would be killed; Mitchell's role in the scheme was supplying money to pay the shooter. The next witness was Mitchell's ex-girlfriend, Heather Clark. She testified

that shortly after Hurd's murder, she had overheard a phone call between Mitchell and someone Mitchell identified as "Billy." She then had driven Mitchell (who was injured at the time) to meet with Billy in person. Clark could not hear the entire conversation, but she testified that she overheard Billy say something about hiring a girl to have "something happen to [her boy-friend]," and that Mitchell expressed surprise that Billy would pay someone to do something like that. At the time of her testimony, Clark assumed that "Billy" was Billy Hicks, but she did not know Hicks at the time of the shooting and could not have identified him. Finally, the prosecution called another jailhouse lawyer, David Jones, who also testified that Mitchell had discussed involvement in Hurd's murder and sought help formulating a defense strategy.

After hearing the evidence, the district court found, by a preponderance of the evidence, that Mitchell participated in Hurd's murder, and applied the murder cross-reference, U.S.S.G. § 2D1.1(d)(1). The resultant guidelines range was life imprisonment. The district court then considered other sentencing factors, including Mitchell's extensive criminal history, his lack of remorse, and his manipulative character. The court also noted the fact that Mitchell's current lawyer was his fourth lawyer.[1] It concluded that Mitchell was "willing to do whatever

---

[1] Specifically, the court stated that Mitchell used lawyers "like most people use Kleenex . . . us[ing] them up and throw[ing] them away."

is required to make sure that you come out on top . . . [and] willing to manipulate things and overpower others so that you can do pretty much what you want to, and you're not held accountable for it." The district court sentenced Mitchell to life imprisonment and, in case the sentence was modified to less than life, 10 years' supervised release. Mitchell appeals only his sentence.

## II.

Mitchell first argues that the district court erred by enhancing his sentence to life under the murder cross-reference based solely on a finding by a preponderance of the evidence that Mitchell participated in the first-degree murder of Hurd. Because Mitchell did not raise this issue at his sentencing hearing below, our review is for plain error only. *United States v. Ofcky*, 237 F.3d 904, 906 (7th Cir. 2001). He concedes that we have expressly rejected the argument that, post-*Booker*, a higher standard of proof is required for substantial enhancements based on facts not found by a jury. *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir. 2006). But he presents his argument to preserve it for possible further appeal and to urge us to reconsider our precedent.

Mitchell calls our attention to a split among the circuits on this issue, and argues that we should revisit *Reuter* not only because it was incorrectly decided, but also because it does not deserve full precedential weight.

First, he argues that the holding in *Reuter* was unnecessary because, as the court noted, the evidence there—including an amply corroborated confession— easily was enough to meet a clear and convincing standard. *Id.* at 792. Second, he argues that the issue was not fully engaged in *Reuter* because it was presented under the posture of an *Anders* brief by the defendant's lawyer, who sought to withdraw for want of nonfrivolous grounds for appeal. *Id.* This not only reduced the attorney's incentive to fully argue the contrary position, but also eliminated any incentive for petitions for en banc review or certiorari.

But we would not overturn circuit precedent merely because we disagreed—otherwise the entire doctrine of stare decisis is "out the window." *Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 582 (7th Cir. 2005). And both of Mitchell's arguments regarding the diminished precedential weight of *Reuter* fail for the same basic reason: we have since relied on *Reuter* in three published opinions. *United States v. Pira*, 535 F.3d 724, 728 (7th Cir. 2008); *United States v. Santiago*, 495 F.3d 820, 824 (7th Cir. 2007); *United States v. McMahan*, 495 F.3d 410, 424 (7th Cir. 2007) (vacated on other grounds by *Smith v. United States*, 552 U.S. 1091 (2008)). Neither *Pira* nor *McMahan* involved evidence that would necessarily have met a clear and convincing evidence standard. Moreover, none of the three cases was decided on an *Anders* motion. Had this circuit desired to reconsider *Reuter*, there has been ample opportunity. Finally, to the extent that the existence of a circuit split factors into our decision whether

to reconsider our precedent, we note that *Reuter* sits firmly in the majority camp on this issue.[2]

Mitchell also argues that the evidence of his involvement in Hurd's murder did not even meet the preponderance of the evidence standard. We review the district court's factual findings on sentencing for clear error. *United States v. McLee*, 436 F.3d 751, 765 (7th Cir. 2006). Mitchell singles out two pieces of evidence for criticism. First, he attacks as hearsay Special Agent Gaertner's testimony that jailhouse informant Edward Bradley reported that Mitchell had confided that he assisted in making arrangements to have Hurd killed. But a district court may consider hearsay at sentencing unless it is "devoid of any indicia of reliability." *United States v. Sanchez*, 507 F.3d 532, 538 (7th Cir. 2007).

Second, he points out the gaps in the testimony of Mitchell's ex-girlfriend, Heather Clark. He argues that, taken by itself, her testimony establishes only that Mitchell met with someone named Billy (Clark only assumed at the time of her testimony that it was

---

[2] *Compare United States v. Staten*, 466 F.3d 708, 717-20 (9th Cir. 2006) (requiring clear and convincing evidence for disproportionate impact enhancements) *with United States v. Martinez*, 525 F.3d 211, 214–15 (2d Cir. 2008) (preponderance of the evidence); *United States v. Fisher*, 502 F.3d 293, 301-08 (3d Cir. 2007) (same); *United States v. Grubbs*, 585 F.3d 793, 799-803 (4th Cir. 2009) (same); *United States v. Brika*, 487 F.3d 450, 460-61 (6th Cir. 2007) (same); *United States v. Villareal-Amarillas*, 562 F.3d 892, 894-98 (8th Cir. 2008) (same).

Billy Hicks) and that Mitchell was surprised that Billy had given money to "some girl who was supposed to have her boyfriend, I assume Tony, something happen to him." Even if Mitchell is correct that Clark's testimony, standing alone, would not be enough to support the application of the murder cross-reference, the district court does not consider individual bits of evidence in isolation. Clark's testimony is evidence of Mitchell's involvement in Hurd's murder, and thus lends credibility to Bradley's statements to Gaertner recounting Mitchell's admissions, as well as the in-court statements of David Jones to the same effect. And based on the evidence from Bradley and Jones, the inferences the district court used to fill in the gaps in Clark's testimony were not unreasonable at all. In short, the district court's finding that Mitchell participated in Hurd's murder was not clearly erroneous.

Finally, Mitchell argues that the district court abused its discretion when it considered Mitchell's use—manipulation in the district court's view—of four different attorneys over the course of the criminal proceedings. Because Mitchell's right to choose his lawyers, as well as the inner workings of his relationships with his lawyers, is constitutionally protected under the Sixth Amendment, he argues that the district court erred by considering his exercise of those rights in calculating his sentence. *Cf. Mitchell v. United States*, 526 U.S. 314, 329 (1999) (holding it constitutional error to consider defendant's exercise of his Fifth Amendment privilege as a sentencing factor). Mitchell did not raise the argument below and concedes our review is for plain

error only. *United States v. Ofcky*, 237 F.3d 904, 906 (7th Cir. 2001).

We agree that it would be constitutionally problematic for a district court to punish a defendant at sentencing for the exercise of his Sixth Amendment right to counsel. But that is not what happened here. While the district court's reference to "using lawyers like most people use Kleenex" could be misinterpreted, we believe the reference to Mitchell's relationship with his lawyers was merely an example of what was readily apparent from the record: that Mitchell "was willing to manipulate things and overpower others so that you can do pretty much what you want to, and you're not held accountable for it."

Moreover, any possible error in the district court's reference to the history of Mitchell's representation by four successive attorneys would not be plain error because it was not prejudicial. *See United States v. Miller*, 601 F.3d 734, 739 (7th Cir. 2010). Mitchell's interaction with his attorneys was but one minor factor among a slew of major factors establishing his manipulative character and his ultimate sentence. The district court correctly calculated a guideline range of life imprisonment based on the murder cross-reference, and the finding that Mitchell participated in the murder of a government witness was clearly the driving factor in its sentence. The court also found a life sentence appropriate because Mitchell's extensive criminal history indicated that reform was unlikely at best, and because Mitchell lacked remorse for both the crime of conviction

and the murder of a witness. Further, Mitchell points out that the district court's knowledge of his interactions with his attorneys came exclusively from the docket showing the changes of attorney, but this only suggests that the number of attorneys Mitchell went through was not a significant factor in the sentence because the district court likely formed its opinion of Mitchell's relationship with his attorneys based on its evaluation of his character, and not vice versa.

## III.

The district court did not clearly err in finding by a preponderance of the evidence—the proper evidentiary standard—that Mitchell participated in the murder of Hurd. Nor did it improperly weigh against Mitchell his exercise of his Sixth Amendment right to counsel. The sentence of the district court is therefore AFFIRMED.