NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 1, 2013
Decided May 15, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-2683

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 10 CR 667 |
| FRANCISCO JAVIER NUNEZ, also known as JAVIER, | Matthew F. Kennelly, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Francisco Javier Nunez pleaded guilty to two counts of using a cell phone to facilitate a drug conspiracy. *See* 21 U.S.C. § 843(b). The district court held Nunez accountable for conspiring to distribute 8,500 grams of marijuana and 509 grams of cocaine. Taking these drug quantities into account, the court calculated a Guidelines range of 57 to 71 months' imprisonment and sentenced Nunez below that range to 48 months. Nunez challenges the district court's finding that he was responsible for conspiring to distribute cocaine and also contends that the court imposed an unreasonable sentence because it did not appropriately consider his arguments in mitigation. We affirm.

## Background

In 2009, the FBI in concert with the Elgin Police Department, the Carpentersville Police Department, and the IRS began investigating Nunez's role in distributing narcotics with his father, Jesus Nunez. The investigation included physical surveillance of the men and court-authorized interceptions of their cell-phone conversations with customers. Following the investigation, Nunez, his father, and another man named Khlong Latine were charged by indictment with conspiring to possess and distribute cocaine and marijuana. *See* 21 U.S.C. §§ 841(a)(1), 846. Nunez was also charged with two counts of using a cell phone to facilitate a drug conspiracy, *see* 21 U.S.C. § 843(b), and one count of maintaining a residence for the purpose of growing marijuana, *see* 21 U.S.C. § 856(a)(1).

As part of a plea agreement, Nunez pleaded guilty to two counts of using a cell phone to facilitate a conspiracy to sell marijuana. He admitted that he knowingly allowed his home in Elgin to be used to grow, process, and package 85 marijuana plants. But he maintained that, contrary to the government's assertion, he was not responsible for supplying his father with cocaine or money for the purchase of cocaine.[1]

In its sentencing memorandum and at Nunez's sentencing hearings, the government argued that Nunez should be held responsible for conspiring to distribute 8,500 grams of marijuana (because each marijuana plant should be counted as 100 grams of marijuana, *see* U.S.S.G. § 2D1.1(c) n. (E)) and 509 grams of cocaine. The government based the cocaine figure on three cocaine sales that Jesus made to Latine and another customer; according to the government, Nunez helped Jesus procure the 509 grams of cocaine involved in those transactions.

In support of that contention, the government supplied (1) transcripts of a series of intercepted phone calls between Nunez and Jesus as well as between Jesus and Latine, and (2) a statement by one of Nunez's customers, Anthony Goodman, admitting that he purchased cocaine from Nunez. The first set of calls introduced by the government involve Jesus's first cocaine sale to Latine. During these calls Jesus repeatedly told Latine that he could not conclude a transaction until Nunez returned from Mexico and the two discussed a price. Moreover, on the day Jesus actually delivered the cocaine to Latine, he was seen meeting with Nunez in a parking lot en route to pick up cocaine for Latine in Waukegan, Illinois. In the

---

[1] The amount and type of narcotics Nunez conspired to distribute is relevant to his sentence because use of a communication facility (i.e., a cell phone) to commit a drug offense is covered by U.S.S.G. § 2D1.6, which incorporates the base offense level applicable to the underlying offense, *see* U.S.S.G. § 2D1.1.

second set of calls, Nunez and Jesus discussed their difficulties finding a source of cocaine, mentioning the possibility that Nunez might pick up "a little orphan" while in Mexico. Nunez reassured his father, who complained about a shortage of product, that their customers were "not going to go anywhere" and would still be there when he returned. When Jesus finally concluded sales of cocaine to Latine and another customer he referred to the cocaine as being "my kid's."

The district court ultimately agreed with the government's proposed drug quantities, noting that, though the evidence was not "overwhelming" and there was no "smoking gun," the government had presented "a persuasive fabric of circumstantial evidence" establishing that Nunez was involved in the three cocaine transactions. The district court's finding with regard to Nunez's involvement in the cocaine distribution resulted in a base offense level of 26, as opposed to the base offense level of 14 that would have applied had the district court considered only the 8,500 grams of marijuana. *See* U.S.S.G. § 2D1.1(c)(7), (13). The district court ultimately sentenced Nunez below the calculated Guidelines range to 48 months' imprisonment.

## Analysis

Nunez first contends that the district court applied the wrong standard of proof when it concluded that he conspired to distribute 509 grams of cocaine. The court should not have based its finding on a preponderance of the evidence, he asserts, urging that a more demanding standard of proof was required because the resulting drug quantity produced a significantly higher Guidelines range. But this court has repeatedly rejected that proposal, and Nunez provides no reason to revisit that debate. *See, e.g.*, *United States v. Mitchell*, 635 F.3d 990, 993 (7th Cir. 2011); *United States v. Pira*, 535 F.3d 724, 728 (7th Cir. 2008); *United States v. Reuter*, 463 F.3d 792, 792-93 (7th Cir. 2006).

Even under the preponderance standard, Nunez next contends, the government did not establish his involvement in distributing cocaine. He asserts generally that the district court erred by considering unreliable evidence, including Goodman's hearsay statement that he purchased cocaine from Nunez. Nunez is right that a district court may not sentence a defendant based on unreliable information, *see United States v. Davis*, 682 F.3d 596, 618 (7th Cir. 2012); *United States v. Isom*, 635 F.3d 904, 908 (7th Cir. 2011); *United States v. Mendoza*, 576 F.3d 711, 717 (7th Cir. 2009), but the Federal Rules of Evidence do not apply at sentencing and "hearsay statements are 'often an integral part of the sentencing process.'" *United States v. Maiden*, 606 F.3d 337, 339 (7th Cir. 2010) (quoting *United States v. Hankton*, 432 F.3d 779, 790 (7th Cir. 2005)); *see also Isom*, 635 F.3d at 907. Besides describing them as uncorroborated, Nunez makes no effort to demonstrate why the intercepted calls or Goodman's statement to the FBI

were unreliable. And even the uncorroborated statement of a biased witness can support a factual finding. *See Mendoza*, 576 F.3d at 718; *United States v. Johnson*, 489 F.3d 794, 797 (7th Cir. 2007). To challenge the district court's drug-quantity findings, Nunez must demonstrate clear error, *see United States v. Johnson*, 643 F.3d 545, 551 (7th Cir. 2011); *United States v. Barnes*, 602 F.3d 790, 794 (7th Cir. 2010), and he cannot do so merely by asserting that the district court premised its findings on unreliable evidence, *see Maiden*, 606 F.3d at 339; *Hankton*, 432 F.3d at 790.[2]

Nunez last asserts that the district court imposed an unreasonable sentence by failing to appropriately weigh his post-arrest rehabilitation, the hardship his incarceration would impose on his infant son, or his need to cope with post traumatic stress disorder. The district court did discuss these arguments, but ultimately concluded that probation would not account for the seriousness of Nunez's conduct or provide adequate deterrence, *see* 18 U.S.C. §§ 3553(a)(2)(A), (B). And because Nunez's term is below the Guidelines range, this court presumes that the district court's decision was reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Jones*, 696 F.3d 695, 699 (7th Cir. 2012); *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008). Nunez may not overcome that presumption merely by contesting the weight the district court attached to the various sentencing factors. *See United States v. Coopman*, 602 F.3d 814, 818–19 (7th Cir. 2010); *United States v. Busara*, 551 F.3d 669, 674 (7th Cir. 2008).

AFFIRMED.

---

[2] Beyond his general assertion that the district court based its finding on unreliable evidence, Nunez charges the district court with not making an explicit finding about the scope of the conspiracy. But the district court made such a finding when it refused to attribute to Nunez all the cocaine Jesus distributed, as did the probation officer, and instead concluded that Nunez could be held responsible only for the three transactions with which he assisted his father. *See United States v. Salem*, 597 F.3d 877, 885 (7th Cir. 2010); *United States v. Soto-Piedra*, 525 F.3d 527, 533 (7th Cir. 2008).